512 So.2d 594 (1987)
Calvin ENGRUM, III, Plaintiff-Appellant,
v.
BOISE SOUTHERN COMPANY, et al., Defendants-Appellees.
No. 86-779.
Court of Appeal of Louisiana, Third Circuit.
July 22, 1987.
Writs Denied October 30, 1987.
*595 Gail N. McKay and Grady Louis Jones, III, Baton Rouge, for plaintiff-appellant.
Hall, Lestage & Landreneau, H.O. Lestage, III, Deridder, Brame, Bergstedt & Brame, David McCain, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
FORET, Judge.
This is a malicious prosecution suit filed by plaintiff, Calvin Engrum, III, against his employer, Boise Southern Company, several Boise Southern employees, Sheriff M. Bolivar Bishop, Beauregard Parish Sheriff's Department, Patsy Carpenter, First National Bank of DeRidder and Commercial Union Insurance Company, insurer of the bank and Ms. Carpenter. The trial court dismissed plaintiff's case against the bank, Patsy Carpenter, Commercial Union Insurance Company, and Sheriff Bolivar Bishop after sustaining peremptory exceptions of prescription and no cause of action.

FACTS
Boise Southern employed plaintiff, as a wood helper, continuously from January 25, 1979 until his date of termination, July 16, 1983. Plaintiff was terminated for alleged sabotage of company property and, on or about July 18, 1983, filed a grievance through his local # 725 of the United Paper Workers International Union, seeking reinstatement and back pay. Plaintiff appealed the termination through the grievance procedure, and his grievance was denied on August 12, 1983, in a letter from J.L. Duhon, Human Resources Manager of Boise Southern Company. Thereafter, plaintiff, through his union, submitted the appeal of his July 16,1983 discharge to arbitration in accordance with his union agreement.
On May 16, 1984, the arbitrator rendered a decision sustaining plaintiff's grievance and reinstating him to his former position with full back pay. Plaintiff did not receive unemployment benefits from July 16, 1983 through May 16, 1984.
On June 4, 1984, plaintiff returned to work for Boise. Later, in June of 1984, he received information that he would receive a back pay check as a result of the arbitration decision in the amount of $16,000 or $17,000. On June 27, 1984, plaintiff picked up his check from the mill manager's office. The check was in the amount of $16,890.00. He deposited it in his account at the First National Bank of DeRidder. Teller Patsy Carpenter noted that the check had been altered but proceeded to cash it. She gave plaintiff $2,000 cash and deposited the balance of the check in plaintiff's account with First National Bank of *596 DeRidder. Immediately thereafter, Carpenter called a supervisor at another branch and informed him of the alteration apparent on the face of the check. She was told to report the alteration to the payroll department at Boise's office.
Patsy Carpenter called Boise's office for verification of the check amount and was told that there had been an error. The face amount of the check was $16,698.90; however, the employee stub showed $11,698.90. Joanne Yerg, payroll clerk at Boise, informed Carpenter that there had been an error and that the money must be returned and a new check issued. Patsy Carpenter called plaintiff and directed him to return the money he had received. Plaintiff returned the entire amount of $16,698.90 to the bank on June 27, 1984, the date the check was cashed. At that time plaintiff was informed that he would receive another check.
An investigatory meeting was held on June 28, 1984, at Boise's office on a claim that plaintiff had altered the check. After the hearing, plaintiff was discharged and later arrested. Deputy McCullough executed the affidavit for forgery upon which an arrest warrant was issued. However, the record does not reflect who made the initial complaint.
The record shows that Deputy McCullough obtained the altered check from Boise Company employees. He conducted an independent investigation until July 2, 1984, at which time the plaintiff was arrested. McCullough admitted in his testimony that during his investigation he had occasion to talk with Patsy Carpenter, bank teller, who admitted to McCullough that plaintiff returned the money immediately upon request. Furthermore, McCullough admitted conversing with the payroll clerk, Joanne Yerg, who admitted to him that she had corrected the check with liquid paper in order to correct a typo. Despite this information, Deputy McCullough executed an affidavit for forgery which was the basis of the warrant for plaintiff's arrest. On July 2,1984, Deputy Michael Cooley arrested plaintiff pursuant to the arrest warrant.
Boise requested a reconsideration of the first arbitration decision after plaintiff was discharged and arrested. Plaintiff complied with the requirements for arbitration of a second discharge. The hearings were held on February 15, 1985 and March 20, 1985.
From June 27, 1984 through July 30, 1985, plaintiff was unemployed. On July 30, 1985, the second arbitrator rendered a decision instructing Boise to return plaintiff to his former position with full back pay and interest, and that plaintiff was to receive all benefits due him as a result of such employment.
In August of 1985, plaintiff intended to return to work, but was unable to work at his former employment allegedly as a result of the actions of Boise Company employees. Thereafter, plaintiff sought psychological counseling and treatment.
Plaintiff received a copy of a letter addressed to Sheriff Boliver Bishop from the Beauregard Parish District Attorney, William C. Pegues, III, stating that there was insufficient evidence for a successful prosecution of the plaintiff. That letter was received on November 28, 1984.
Plaintiff instituted this suit on November 26,1985, alleging malicious prosecution and intentional infliction of severe emotional distress, against the First National Bank of DeRidder, Patsy Carpenter, and Commercial Union Insurance Company; alleging malicious prosecution, false arrest, and negligent infliction of severe emotional distress against the defendant, M. Bolivar Bishop, Sheriff of Beauregard Parish. The trial court dismissed plaintiff's suit against First National Bank of DeRidder, Patsy Carpenter, Commercial Union Insurance Company, and M. Bolivar Bishop, pursuant to peremptory exceptions of prescription filed by said defendants, holding that plaintiff's cause of action commenced to run from June 27, 1984 against the First National Bank and Patsy Carpenter, and from July 2, 1984 against defendant, M. Bolivar Bishop. Plaintiff is appealing that ruling.

ISSUES
(1) Did plaintiff's causes of action against First National Bank of DeRidder *597 and its employee, Patsy Carpenter, for malicious prosecution and intentional infliction of severe emotional distress prescribe?
(2) Did the plaintiff's causes of action against Beauregard Parish Sheriff Bishop for malicious prosecution, false arrest, and negligent infliction of severe emotional distress prescribe?
La.C.C. art. 3492 provides in pertinent part that prescription commences to run from the day injury or damage is sustained in a delictual action. For purposes of the hearing on the exception of prescription, allegations of the plaintiff's original and amended petitions are taken as true. Foster and Glassell Co. v. Knight Brothers, 152 La. 596, 93 So. 913, 914 (1922). The party pleading prescription has the burden of proving the same. Slocum v. Daigre, 424 So.2d 1074 (La.App. 3 Cir. 1982), writ denied, 429 So.2d 128 (La.1983). Plaintiff's original and amended petitions do not show that plaintiff's causes of action occurred on or are limited to the date of June 27, 1984. The petitions allege that plaintiff's injury is of a continuing nature.

MALICIOUS PROSECUTION
On December 13,1985, all of the defendants filed peremptory exceptions of prescription alleging that plaintiff's cause of action had prescribed because his claim was filed over one year from the date of the arrest. That contention appears to be erroneous. It is well established that a cause of action for damages for malicious prosecution does not come into existence until the termination of the prosecution. Hibernia National Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980); Dubois v. State Through Dept. of Public Safety, 466 So.2d 1381 (La.App. 3 Cir.1985); Muldrow v. Jones, 85 So.2d 711 (La.App. Orleans, 1956); Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662 (5th Cir.1967).
A dismissal of prosecution or an abandonment of prosecution by the district attorney is considered a termination of the proceedings in favor of the petitioner for the purposes of having a cause of action for malicious prosecution. Parks v. Winnfield Life Insurance Co., 336 So.2d 1021 (La.App. 3 Cir.1976), writ denied, 339 So.2d 351 (La.1976); Harvey v. Bertaut, 303 So.2d 211 (La.App. 4 Cir.1974); Sazdoff v. Bourgeois, 301 So.2d 423 (La.App. 4 Cir. 1974). On November 28, 1984, District Attorney for Beauregard Parish, William C. Pegues, III, authorized Sheriff Bishop to cancel petitioner's bond and close petitioner's file as a result of his opinion that there was insufficient evidence to sustain a conviction.
Therefore, plaintiff is correct in his assertion that his cause of action did not come into existence until the charges were dismissed against him by the District Attorney on November 28, 1984. Any suit for damages for malicious prosecution filed prior to November 28, 1984 would have been premature. Therefore, plaintiff's action filed on November 26, 1985, was timely.
We need not rule whether the elements of the tort of malicious prosecution are present on the face of the pleadings because we are merely deciding the issue of prescription. In view of the foregoing, it is evident that the trial court erred in sustaining defendants' exception of prescription.

INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
The pleadings filed by plaintiff alleged that the emotional distress he suffered manifested when he attempted to return to work in August of 1985, and at that time realized he was unable to do so. Subsequently, his physician stated that he would be unable to work for at least two years and hospitalized the plaintiff. Prior to this time, during the period of his termination, plaintiff claims he was not aware of his damages, as they had not manifested themselves with sufficient certainty to be susceptible of proof in a court of law. Plaintiff points out that until August of 1985, he was not given an opportunity to return to work. Consequently, any damages therefrom would not have been apparent until August of 1985.
*598 Plaintiff claims that his case of intentional and negligent infliction of severe emotional distress against the bank and the Sheriff have not prescribed. Any emotional distress inflicted by the bank as a result of the teller's negligent cashing of the check certainly manifested itself by the time of plaintiff's arrest on July 2. Consequently, we believe that his claim as to the bank and Patsy Carpenter has prescribed. However, as a result of our finding that plaintiff's claim against the Sheriff for malicious prosecution did not prescribe, any emotional distress as a result of that malicious prosecution necessarily cannot be prescribed. The trial court erred in sustaining Sheriff Bishop's exception of prescription on this ground.

WAS PRESCRIPTION TOLLED?
Plaintiff additionally argues that prescription on all claims (including the one against the bank for intentional infliction of emotional distress) set forth in his original and amending petitions was interrupted by submitting the matter for arbitration. Plaintiff correctly points out that C.C. art. 3105 states that prescription is interrupted as to any matter submitted to arbitration. The second arbitration proceeding concerning plaintiff's termination for allegedly altering the check in question was completed on July 30, 1985. Prescription as to any claim the plaintiff had concerning his termination for alleged forgery and the institution of criminal proceedings against him for forgery was interrupted until that date.
C.C. art. 3503 provides that interruption of prescription against one solidary obligor will interrupt prescription against all solidary obligors. Plaintiff claims that all allegations involved in this case arose from the same transaction or occurrence of June 27, 1984, when he was given a defective check, allowed to cash it, and, as a result, fired and arrested for doing so. Plaintiff cites Art. 3503 to support his contention that defendants are joint tort-feasors and that they are solidary obligors. He claims that consequently prescription was interrupted as to all defendants.
It appears from the face of the pleadings that the plaintiff alleged that all defendants were joint tort-feasors and that they were liable in solido. Consequently, interruption of prescription against Bishop will operate to interrupt prescription against all defendants. C.C. art. 3503.

EXCEPTIONS OF NO CAUSE OF ACTION
First National Bank of DeRidder, Patsy Carpenter, and Commercial Union Insurance Company filed exceptions of no cause of action. The trial court erred in admitting testimony on the exceptions of no cause of action. C.C.P. art. 931. It is well settled that the purpose of an exception of no cause of action is to determine the legal sufficiency of the petition. Darville v. Texaco, Inc., 447 So.2d 473 (La. 1984). Such an exception is triable on the face of the pleadings and, for the purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true. La.C. C.P. art. 931. An exception of no cause of action must generally be overruled unless the plaintiff has no cause of action on the face of the pleadings. Darville, supra.
The allegations in plaintiff's petition admit to a reasonable hypothesis under which he would have a cause of action against the teller and the bank. Plaintiff alleged that the bank teller telephoned Boise and its plant manager informing them that an altered and/or defective check had been presented by the plaintiff. Consequently, the exception of no cause of action must be overruled.
In view of the foregoing, we conclude that the trial court erred in sustaining the exceptions of prescription and of no cause of action.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed in all respects. This case is remanded to the trial court for further proceedings.
*599 Costs of this appeal and at the trial level are assessed against the appellees.
REVERSED AND REMANDED.