527 So.2d 362 (1988)
Calvin ENGRUM, III
v.
BOISE SOUTHERN CO., et al.
No. 87-321.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1988.
*363 Gail N. McKay and Brady Jones, Baton Rouge, for plaintiff-appellant.
H.O. Lestage, III, Hall, Lestage, DeRidder, for defendants-appellees.
Before FORET, STOKER and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Calvin Engrum, began employment with defendant, Boise Southern Company, in its paper mill located in DeRidder, Louisiana in 1979. Plaintiff was a member of Local 725 of the United Paperworks International Union, the collective bargaining agent for production and maintenance workers at the Boise Mill.
On July 16, 1983, production came to a halt in the woodyard as a result of a log having become jammed in a conveyor belt. A Boise supervisor, Dennis Millsap, charged plaintiff with sabotage of the company property and suspended him.
Plaintiff, through his Union filed a grievance challenging his discharge. The grievance was processed according to the procedure set out by the collective bargaining agreement between Boise and the Union and was eventually heard by an arbitrator appointed under the contract. The arbitrator ruled that plaintiff had been discharged without probable cause in violation of the collective bargaining agreement. In May of 1984, the arbitrator directed Boise to reinstate plaintiff with full back pay.
Plaintiff returned to work at Boise in early June of 1984. On June 27, 1984, Engrum was instructed by the management of Boise to pick up his check for back pay issued pursuant to the arbitration award. The correct amount of the check should have been $11,698.9o, however, a Boise employee, Jo Ann Yerg, made the check out for $16,698.90. Instead of preparing a new check, Ms. Yerg covered the incorrect amount with typing correction liquid and typed the correct figure over the incorrect figure.
After receiving the check, plaintiff went to the First National Bank in De Ridder. Plaintiff deposited the entire amount of the check into his savings account except for $2,000 which he took in cash. The check was processed by the bank in the amount of $16,698.90. After plaintiff left the bank, a bank employee who was suspicious about the check because of the apparent use of correction liquid on the check called Boise. A Boise employee informed her that the check was supposed to be in the amount of *364 $11,698.90. The bank employee called plaintiff at his home and at her request, he immediately returned the $2,000 to the bank and his savings account was debited the full amount of the deposit.
Because of the above incident, Boise plant manager, Robert Martin, discharged plaintiff the following day and filed a criminal charge of forgery with the Beauregard Parish Sheriff's Office. Plaintiff was arrested, jailed and required to post bond for his release.
The District Attorney for Beauregard Parish dismissed the criminal charges against plaintiff on the ground that there was no sufficient evidence to prosecute. Plaintiff once again challenged his termination through the grievance mechanism and the matter was once again heard by an arbitrator. In July of 1985, the arbitrator ruled that this discharge was in violation of the collective bargaining agreement, as it was without probable cause. Boise was again directed to reinstate plaintiff with full back pay.
Plaintiff filed suit in November of 1985 against Boise and a group of Boise employees who had allegedly either caused his discharges or who had allegedly manufactured the criminal charges against him. Also made defendants were the First National Bank of De Ridder and one of its employees, the Sheriff of Beauregard Parish and various insurance carriers for the defendants. Plaintiff alleged that all of the defendants were responsible for the malicious prosecution of him on the criminal charge. Moreover, with respect to Boise and the Boise employee defendants, plaintiff alleged that their actions constituted "extreme and outrageous conduct which conduct by defendants have caused plaintiff severe emotional distress."
All defendants filed peremptory exceptions of prescription in response to plaintiff's petition. In addition, the Sheriff of Beauregard Parish filed an exception of no cause of action. The district court granted the exceptions of the bank, the bank employee, and of the Sheriff. The district court denied the exceptions of Boise and the Boise employee defendants.[1]
Ultimately, Boise and the employee defendants moved for summary judgment alleging that with respect to the malicious prosecution claim, the defendants had acted with probable cause and that claims other than the malicious prosecution claim were preempted by federal law.
The district judge granted summary judgments to defendants Millsap, Yerg and Crabtree on the basis that there was no genuine issue as to any material fact relating to their alleged liability and that they were entitled to judgment as a matter of law. The lower court also granted summary judgment to defendants Boise and Robert Martin as to all claims asserted by plaintiff except for his claim against those defendants for malicious prosecution. The lower court reasoned that all of the claims except for the malicious prosecution claim were preempted by federal law. In summary, the district court granted summary judgment as to all defendants except Boise and Robert Martin and, as to those two defendants, allowed the case to proceed only on the malicious prosecution claim.
We first address plaintiff's contention that the district court erred as a matter of law in holding that all of his claims against Boise Southern and Robert Martin except for the malicious prosecution claims were preempted by federal law.
Plaintiff urges that his claims against defendants for the intentional infliction of emotional distress are not preempted by federal law (Section 301) of the Labor Management Relations Act, 29 U.S.C. § 185(a) and that the trial court erred when it made such a finding. We agree.
Section 301 vests jurisdiction in the federal courts to resolve claims for violation of labor contracts. 29 U.S.C. § 185(a). Actions in federal or state court alleging breach of a labor contract must either be *365 brought under Section 301 and resolved per federal law or dismissed as preempted. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985).
Allis-Chalmers is the principal case interpreting Section 301. The court in Allis-Chalmers found that parties cannot escape the preemptive effect of Section 301 by labeling their claims as tort claims rather than contract claims. Id. at 210, 105 S.Ct. at 1910. The court further held that the key to determining if preemption applies is not how the complaint is cast, but whether the claims are able to be resolved only by referring to the provisions of the collective bargaining agreement. Id. at 213, 105 S.Ct. at 1912. The court added that Section 301 does not preempt every dispute concerning employment or tangentially involving a collective bargaining agreement. Id. at 211-12, 105 S.Ct. at 1911-12.
The court framed the test for preemption of a state tort claim as whether the tort "confers non-negotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is extricably intertwined with consideration of the terms of the labor contract." Id. at 213, 105 S.Ct. at 1912.
In the instant situation, plaintiff has twice submitted his discharge claims to an arbitrator and has twice been awarded the only relief the arbitrator had the authority to award per the collective bargaining agreement reinstatement and backpay. Plaintiff claims damages for intentional infliction of emotional distress which is a remedy that is beyond the arbitrator's authority to award under the collective bargaining agreement. While the issues relating to the tort claim are obviously related to the issues of the matter already submitted before the arbitrator, the issue before the arbitrator was whether Boise Southern had violated the collective bargaining agreement when it discharged plaintiff. It was irrelevant in those proceedings whether the company had acted with malice and intent, whether its conduct was generally outrageous and to what extent plaintiff was mentally injured. The action of intentional infliction of emotional distress can be adjudicated without resolution of the question of whether plaintiff's discharge was a breach of the collective bargaining agreement. Put yet another way, the tort does not have its source in the provisions of the collective bargaining agreement and the existence of the tort does not depend upon interpretation of the agreement. It follows, that the claim should not be preempted.
We next address plaintiff's contention that his petition states a claim for intentional infliction of emotional distress against defendants. Louisiana recognizes the tort of intentional infliction of emotional distress and the general rule is that the defendant must either have actively desired to bring about the mental anguish of the plaintiff or realized to a virtual certainty that his conduct would bring about such distress. Recovery for intentional infliction of mental distress is generally limited to instances of outrageous conduct. Smith v. Mahfouz, 489 So.2d 409, 413 (La.App. 3rd Cir.1986).
After a review of the record, we find that plaintiff's petition clearly states a claim for intentional infliction of emotional distress against defendants. Plaintiff's petition alleges that defendant Millsap repeatedly made public threats against him "causing extreme stress and mental anguish" to plaintiff while he was attempting to perform his work; that defendants Millsap and Martin fired plaintiff for alleged sabotage of company property without conducting an adequate investigation and that such conduct was "tantamount to extreme and outrageous conduct [causing] plaintiff severe emotional distress ...;" that defendants Martin, Yerg and Crabtree issued a payroll check to plaintiff which was either incorrectly made out or was written so as to appear to be altered and subsequently caused plaintiff's arrest while they were aware of plaintiff's innocence which action caused plaintiff "mental anguish, humiliation and embarrassment in his community;" that Boise terminated plaintiff a second time which was "an intentional act on its *366 part which amounted to extreme and outrageous conduct which has caused plaintiff further severe emotional distress" and that the conduct of Boise and its employees demonstrated a continuous pattern of conduct intended to cause him mental harm. Based on the foregoing, we conclude that plaintiff's petition stated a claim for intentional infliction of emotional distress against defendants.
In plaintiff's final assignment of error, he urges that the district court erred in granting summary judgment to the individual employee defendants on the ground that there was no genuine issue to be tried with respect to their liability. Plaintiff addresses this assignment of error in two sub-parts. In the first sub-part, plaintiff urges that as to defendants Jo Ann Yerg and Delores Crabtree, there are genuine issues of disputed fact with respect to their liability on the malicious prosecution claim. We agree.
The malicious prosecution claim arose out of the transfer of a check from Boise to plaintiff. The check was made out by Yerg who admitted in her affidavit that she originally typed the check in the incorrect amount and then altered the check with liquid paper. Yerg also asserted that when she delivered the check to Crabtree, who gave the check to Engrum, that the check was in the correct amount. Crabtree, who handed the check to Engrum one day after it was prepared, states in her affidavit that the check was not altered while she had possession of it. Plaintiff, in his affidavit, states, however, that when he received the check it was for over $16,000 and that he immediately negotiated the check in that amount at the bank.
Clearly, there is a dispute over the amount of the check when plaintiff received it. The condition of the check at the time plaintiff received it is material to the malicious prosecution claim. If it is established at trial that the check was in the amount of $16,698.00 when it was given to plaintiff, a jury could reasonably infer that Yerg or Crabtree or both of them were lying and were a part of a scheme to falsely charge plaintiff with forgery. Thus, we find that the granting of summary judgment by the district court in light of these facts was error.
Plaintiff next urges that as to all of the individual defendants, employees, there are disputed issues of material fact relevant to the claim for intentional infliction of emotional distress and that the trial court erred when it granted summary judgment to them. We agree.
In the instant situation, plaintiff, in his petition, avers that the individual employee defendants engaged in continuous and systematic conduct which cumulated to cause him severe emotional distress. Although plaintiff's claim may eventually be shown to lack merit, we cannot so state as a matter of law. Plaintiff has alleged the intentional infliction of emotional distress on the part of the individual employee defendants (Yerg, Crabtree, Martin and Millsap). His pleadings therefore raise material issues of fact that must proceed beyond summary judgment.
Finally, defendants contend that even if this court were to decide that summary judgment was not proper as to them, the claims have nevertheless prescribed. We disagree.
Plaintiff alleges in his petition that he suffered severe emotional distress as a result of the actions of defendants. Plaintiff adds that the emotional distress he suffered manifested when he attempted to return to work in August of 1985 and at that time came to the realization that he was unable to do so. Plaintiff was hospitalized at this time for his unstable emotional condition. Prior to this time, plaintiff adds that he was not aware that he had sustained damages as they had not manifested themselves with sufficient certainty to be susceptible of proof in a court of law. Until August of 1985, plaintiff was not given the opportunity to work. Based on the foregoing, we find that plaintiff's damages were not apparent until August of 1985. Thus, prescription did not begin to run until this time. Because suit was filed by plaintiff on November 26, 1985, well within *367 the one year prescriptive period, defendant's contention is without merit.
Accordingly, for the reasons assigned, the judgment of the district court is reversed and remanded. All costs are assessed to defendants.
REVERSED AND REMANDED.
NOTES
[1] The ruling dismissing the claims against the bank, the bank employees and the Sheriff was appealed to this court and reversed in all respects. The case can be found at 512 So.2d 594 (La.App. 3rd Cir.1987), writ denied, 513 So.2d 1215 (La.1987).