594 So.2d 1049 (1992)
Sharon Z. BEAUDOIN, et ux., Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, et al., Defendant-Appellee.
No. 90-863.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
Writ Denied May 8, 1992.
*1050 Broussard, Bolton, Halcomb & Vizzier, Daniel Broussard, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, David Hughes, Alexandria, for defendant-appellee.
Before DOMENGEAUX, C.J., STOKER, J., and MARCANTEL,[*] J. Pro Tem.
BERNARD N. MARCANTEL, Judge. Pro Tem.
The issue on appeal is whether plaintiff is entitled to damages in tort or, in the alternative, worker's compensation benefits for an emotional breakdown which plaintiff alleges she sustained due to extraordinary work-related emotional and mental stress placed on her while in the course and scope of her employment with defendant.
Sharon Z. Beaudoin and Philip Beaudoin, Jr. (hereinafter plaintiffs) brought this action against her former employer, Alexander & Alexander, and its insurer, Hartford Accident & Indemnity Company (hereinafter defendants), and R. Phil Hatchette (hereinafter Hatchette). After a trial on the merits, the trial judge ruled in favor of the defendants holding that an intentional tort was not committed and also, the court was unable to discern any sudden or precipitous event that occasioned plaintiff's alleged debilitating condition, thereby rejecting her demand for worker's compensation benefits. Plaintiff timely appeals from the trial court's written formal judgment.

FACTS
Plaintiff has worked in the insurance industry since 1964. In the latter part of 1983, plaintiff was encouraged to leave her employer, Alexander & Bolton, by an ex-supervisor, Dianne Blankenship, who had previously left Alexander & Bolton to go to work for Alexander & Alexander. Ms. Blankenship had convinced plaintiff that defendant's company was a better organization, one in which she could learn more and grow faster. In January, 1984, plaintiff began working for defendant under the direct supervision of Dianne Blankenship. In December, 1985, plaintiff was placed under the supervision of R. Phil Hatchette who had been brought to Alexander & Alexander to take over the direct management of the commercial lines department. Plaintiff's job title was commercial service representative and the duties of the position included overseeing select commercial accounts which generated less than $1,000.00 in commission. Plaintiff was also handling new business.
Plaintiff states that the harassment began almost immediately from the time Hatchette became her supervisor. Plaintiff testified to an incident in which Hatchette told her that a co-employee was to be promoted as manager of the commercial department. Upon hearing this news, plaintiff blurted out, "You've got to be kidding." She was in shock because, in her opinion, the co-employee was not competent enough to handle the position. Plaintiff contends that from this time forward the relationship between Hatchette and herself went downhill.
Plaintiff testified that Hatchette constantly raised his voice to her, cursed, called her names such as dumb and stupid, went into violent, screaming rages, and made statements about her appearance, such as calling her fat. Plaintiff felt that Hatchette was deliberately singling her out for his abuse.
Testimony was given by a co-employee, who no longer worked for Alexander and Alexander, that he observed situations in which Hatchette would yell and scream at plaintiff and used profanity on a regular basis. He witnessed Hatchette being verbally abusive to plaintiff on several occasions. Often Hatchette was chauvinistic in his actions and would make remarks about the inferiority of women. The co-employee testified that he saw plaintiff crying on *1051 several occasions after some of these situations occurred. He further testified that it was obvious to him and several other employees that Hatchette had singled out plaintiff because Hatchette did not treat other employees in the same manner that he treated plaintiff. He further noted that, with the work load plaintiff had, combined with the screaming and yelling Hatchette directed toward plaintiff, he did not see how she handled it all.
Plaintiff testified that, in August or September, 1986, she began having headaches, fever and chest pain, and that her condition got progressively worse until in November she went to see Dr. Kenneth T. Johnson. She thought she was having a heart attack because the pains were so severe. She testified that she was at work when these symptoms began. She recalls a specific incident regarding the Metroplex account in which she was given a quote from a rater named Ella. Later, a huge discrepancy was discovered and, when plaintiff went to Hatchette regarding the problem, Hatchette went into a most violent rage. Hatchette accused plaintiff instead of the rater of making the mistake. Plaintiff stated that she left the building after this incident because of chest pains and weakness.
Contradictory testimony was given by Hatchette in which he admits to raising his voice, but not to screaming or yelling. He admitted to cursing, but that it was never directed toward plaintiff. He stated he never made any statements to plaintiff about her being stupid. He did state he made remarks that she wasn't working smart, that she didn't organize and prioritize her work.
Tommy D. Gunnin, the Managing Vice-President of the Alexandria-Shreveport office, testified that he was first aware that plaintiff was having problems at work from a July, 1986 performance review, that plaintiff was having trouble doing the kind of detail work necessary in her job. He recalls discussing with Hatchette the idea of plaintiff going into sales in the business because of her good people skills. He noted that Hatchette's reaction to this was very supportive. Mr. Gunnin and Hatchette spoke with plaintiff about this change and plaintiff's only response was the possibility of her not being successful in sales and what would happen to her then. Their response to this was that she could not return to her old position. Efforts were made to try and work her into the area of sales with a goal set for January, 1987. But, by the middle of October, 1986, more problems with plaintiff's work became apparent and these problems were more potential error and admission exposure for the company. Mr. Gunnin testified that on numerous occasions they discussed the problems with plaintiff and her only excuse was that the work load was such that she could not cope with it. Mr. Gunnin was not aware of any discussions between plaintiff and Hatchette. He did state that the people who performed their jobs enjoyed working for Hatchette while people who had trouble with their job performance probably did not enjoy working with Hatchette because he was very direct and didn't hesitate to confront the problems that arose.
Mr. Gunnin recalls that in November plaintiff came to him and asked for some time off because she was having health problems which she perceived to be a nervous breakdown. Mr. Gunnin told plaintiff that he did not intend to terminate her when she returned to work but that when she returned she would be in sales and not service. He then recommended that plaintiff go to their employee assistance program to see about available counseling.
Plaintiff first saw Dr. Kenneth T. Johnson, a family practice physician, on November 10, 1986. Dr. Johnson saw plaintiff a couple of more times and then referred her to Dr. Ronald S. Pryer, a psychologist. Dr. Pryer noted in his report dated February 20, 1987 that plaintiff suffered from a severe adjustment reaction with mixed emotional features and temporary emotional disability due to stress at work. He noted that she had complaints of chest pain, depression, and anxiety related to job difficulties. He also stated that plaintiff relayed that Hatchette was a screamer and made her feel stupid. He gave her a personality *1052 assessment test which showed a marked distress syndrome. Dr. Pryer treated plaintiff until November 15, 1987 at which time he released her to go back to work.

LAW

I. Intentional Tort:
Under the Worker's Compensation Act of Louisiana, an injured person seeking damages against his employer must prove that his injuries resulted from an intentional tort. La.R.S. 23:1032 reads in part:
"A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
* * * * * *
(2) For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act."
In Caudle v. Betts, 512 So.2d 389 (La.1987), the Supreme Court stated that the legal precepts of general tort law must be applied when an employee is seeking recovery from his employer for an intentional tort.
Recently decided in a case which is indistinguishable from the instant case, the Louisiana Supreme Court held that a supervisor's conduct was not extreme or outrageous enough to give rise to recovery for intentional infliction of emotional distress even though he launched a profane tirade directed at three workers. White v. Monsanto, 585 So.2d 1205 (La.1991).
In the case at hand, plaintiff asserts that her claim against Hatchette is based upon his intentional infliction of emotional distress. The general rule for this type of tort as discussed by this court in Engrum v. Boise Southern Co., 527 So.2d 362 (La. App. 3 Cir.1988) is that the employee must prove that the defendant either actively desired to bring about the mental anguish of the plaintiff, or realized to a virtual certainty that his conduct would bring about such distress. Recovery is usually limited to instances of outrageous conduct. Engrum, supra, at page 365.
Outrageous conduct is defined in Steadman v. South Central Bell Telephone Company, 362 So.2d 1144 (La.App. 2 Cir. 1978) as "conduct that is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."
As noted by the trial judge in his written reasons for judgment in this case, there was considerable testimony given regarding Hatchette's attitude and conduct in supervising plaintiff's work. Often this testimony was conflicting and highly controverted. When there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences should not be disturbed on review. The manifest error rule requires that great deference be given to findings of the trial court. Morris v. Sigur, 584 So.2d 729 (La.App. 4 Cir.1991).
After careful review of the record, we cannot say that the supervisor's conduct was of such an extreme and outrageous nature as to give rise to a cause of action for an intentional tort. Therefore, the trial judge's ruling was not manifestly erroneous and we affirm the ruling that there was no intentional tort directed at plaintiff.

*1053 II. Worker's Compensation Benefits:
Plaintiff avers that, if she is not entitled to recover in tort for intentional infliction of emotional distress, in the alternative, she is entitled to recover under worker's compensation benefits.
In Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138 (La.1989), the same issue as presented in the case at hand was discussed, "whether a mental injury induced by mental stress is compensable when it is caused by a significant employment incident and is not accompanied by any apparent signs of physical trauma." Sparks, supra, at page 139. There, the trial court denied plaintiff's claim holding that although the plaintiff in fact suffered a temporary mental injury, there was no specific "accident" as found under La.R.S. 23:1021(1). Accident is defined as an "unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the same time objective symptoms of injury."
The appellate court reversed this holding and the Louisiana Supreme Court affirmed the appellate court, stating:
"The `event' which qualifies as an accident can be and often is a forceful and readily identifiable occurrence which causes injury to the employee, e.g., an automobile collision, a fall, an explosion, an assault, etc. However, under the jurisprudence, the sudden and unexpected appearance of a physical injury, such as a heart attack or stroke, is also viewed as an `accident.' See, e.g., Ferguson v. HDE, Inc., 270 So.2d 867, 869-70 (La. 1972) (stroke). In such cases, the onset of the illness or injury is viewed as the accident because, from the employee's perspective, the injury was an unforeseen event which occurred suddenly or violently. Ferguson v. HDE, Inc., supra, 270 So.2d at 870.
The `event' which triggers coverage, then, may be an unexpected and sudden or violent occurrence which causes injury, or it may be an unexpected change in the employee's physical condition which renders him incapable of working, a change caused at least in part by an employment incident. See Malone & Johnson, 13 Louisiana Civil Law Treatise, Worker's Compensation, § 214 (1980 & 1989 Supp.)." Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, at page 142-143 (La.1989).
In Sparks, the plaintiff, a Tulane Medical Center employee, was harassed for several years beginning in 1982 by different employees because of resentment caused over plaintiff's efforts to try and eliminate the practice of smoking marijuana which occurred on a regular basis in the medical supply room. Also, in 1986, increased tension built between plaintiff and a weekend supervisor over a series of other incidents. On April 6, 1987, in a meeting between the weekend supervisor, plaintiff, and her immediate supervisor, suspension of some employees was suggested as a result of plaintiff's complaints about the employees not doing their jobs. During the meeting, the weekend supervisor told plaintiff that if the employees were suspended that they were really going to get her. She immediately began experiencing headaches and was unable to sleep that night. She went to her doctor who diagnosed from her symptoms and talking to the plaintiff that plaintiff was experiencing a depressive reaction due to stress at work. Her condition worsened and she was further diagnosed as having a psychological adjustment disorder related to her employment.
The trial court denied relief, but the appellate court reversed and remanded. Review was granted and the Louisiana Supreme Court found that the communication of threats to plaintiff on April 6, 1987, by her weekend supervisor, was the "event" which produced injury, not the incidents which occurred in the years prior to the threats. The earlier threats prior to April 6 only brought credibility to plaintiff's assertion that the threats were of a serious nature and caused her severe anxiety and distress. Sparks, supra, at 148.
In the case at hand, the trial court stated that "try hard as it may, the court was unable to discern or determine any sudden or precipitous event that occasioned Mrs. Beaudoin's alleged debilitating condition *1054 that manifested itself in the late fall of 1986."
In reviewing the record, plaintiff stated that she regarded the event dealing with the Metroplex account as a specific incident that happened in which she experienced chest pains and weakness. Although this event may have caused plaintiff some discomfort, there is no evidence deduced from the record to show that this event was the "event" that caused plaintiff's debilitating condition. In fact, contradictory testimony was given by Mr. Gunnin, who was Vice-President in charge of both the Shreveport and Alexandria offices, in which he stated that he spoke with plaintiff on several occasions about her failing work performance and she never mentioned any reason for her poor performance except that the work load was too much. It was not until some time in November when she asked for time off from work that he knew that she was having some emotional problems. Mr. Gunnin stated that he was not aware that plaintiff and Hatchette had any "discussions."
Therefore for the reasons assigned, this court affirms the trial judge's ruling regarding both the intentional tort claim and the worker's compensation claim, rejecting plaintiff's demands at her cost.
AFFIRMED.
DOMENGEAUX, C.J., concurs and assigns reasons.
STOKER, J., concurs and assigns written reasons.
DOMENGEAUX, Chief Judge, concurring.
I concur merely to distinguish the case of Frederick v. Town of Arnaudville, 572 So.2d 316 (La.App. 3d Cir.1990), writ denied, February 8, 1991, which I authored, wherein we allowed compensation on the basis that the plaintiff's mental injury was precipitated by an "accident," all as explained therein.
In the case sub judice, as the majority opinion indicates, plaintiff failed to show such an accident. Basically, the trial judge could not discern or determine any sudden or precipitous event causing Mrs. Beaudoin's alleged debilitating condition which manifested itself in the late Fall of 1986, nor can we.
I respectfully concur.
STOKER, Judge, concurring.
I concur in the majority holding. As I appreciate the trial judge's holding regarding the facts as they relate to the tort claim, it was that matters did not happen as plaintiff and her witness say they did. Under the circumstances, we have no basis for disturbing the trial judge's finding of fact. His finding was based on credibility evaluation which means that we have no appellate role. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990) and Rosell v. ESCO, 549 So.2d 840 (La.1989). The rule applies to worker's compensation cases as well. Bruno v. Harbert International, Inc., et al, 593 So.2d 357 (La.1992), No. 91-C-1444 on the docket of the Louisiana Supreme Court.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.