**Katherine Price GLENN**

v.

**BOY SCOUTS OF AMERICA, Boy Scouts of America Attakapas Council, and John Meeks.**

**Civil Action No. 95–1416.**

United States District Court, W.D. Louisiana, Alexandria Division.

July 23, 1997.

Allison Anne Jones, John S. Hodge, Davidson Nix & Jones, Shreveport, LA, for Plaintiff.

Keith M. Pyburn, Jr., Anne H. Breaux, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, for Defendants.

## RULING

LITTLE, Chief Judge.

Defendants Boy Scouts of America ("BSA"), Attakapas Council, Inc., Boy Scouts of America ("Attakapas Council"), and John Meeks ("Meeks") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motion is GRANTED and the suit is DISMISSED with prejudice.

### I. *Factual and Procedural Background*

Plaintiff Katherine Price Glenn's sole remaining claim in this suit is for the intentional infliction of emotional distress.[1] The defendants claim that they are entitled to summary judgment as a matter of law.

The sordid facts of this employment dispute are not contested. In July 1990, Attakapas Council, a local council chartered by the BSA, hired Glenn as a District Executive in Alexandria, Louisiana. The bylaws of the Attakapas Council provide that professional scouters, such as the District Executive, serve "at the pleasure of the Executive Board and the Scout [E]xecutive." The

---

**1.** By ruling of 10 July 1996, this court dismissed Glenn's claims under federal and state employment discrimination statutes, namely 42 U.S.C. 2000e *et seq.* and La.Rev.Stat. Ann. §§ 23:1006, 51:2231 *et seq.* (West 1985 & Supp.1996). We found that each of the defendants did not qualify as Glenn's employer under Title VII and La.Rev. Stat. Ann. § 51:2242.

Scout Executive of Attakapas Council was her immediate supervisor. The Scout Executive was responsible for all operations of Attakapas Council, subject to the bylaws and Executive Board of the Attakapas Council. The Scout Executive was authorized to hire, direct the work, and discharge employees of the Attakapas Council. In approximately February 1994, Meeks replaced Steve Taylor as the Scout Executive for the Attakapas Council. Glenn's employment with Attakapas Council terminated in October 1994.

Glenn's intentional infliction of emotional distress claim arises from the following facts. Her supervisor told her (1) a rumor that Glenn was having an extra-marital affair with a previous scout executive, (2) that an area director was attracted to her and that she was sending out sexual vibes. (3) that she was a "very sexual person"; (4) that she was being placed next to a donor at a table because the donor was "attracted to" her and "might give more money;" (5) that he did not want a woman in the position she held; (6) that she would not be allowed to attend a training program in Florida entitled People Management I and Leadership Seminar, despite the fact that she previously was told that she could attend the program.

Glenn's supervisor required her to play golf with the area director who purportedly was sexually attracted to her and who physically touched her. Her supervisor placed her on a forty-seven day "Work Improvement Plan," giving her the option of accepting the terms of the plan or being terminated. Glenn's supervisor then placed her on a ninety day probation and corrective plan, which she never received. After she complied with the terms of the probation, Glenn was called into a meeting and told by her supervisor that she "was a total disgrace to the profession" and would be terminated because of undisclosed volunteer complaints if she did not resign. She was ultimately coerced into writing a letter of resignation, which she later rescinded.

Glenn suffered anxiety and depression as a result of the termination of her employment. She obtained medical treatment and was placed on antidepressant medication.

## II. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. Id. at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L. Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir.1993).

As there is no factual dispute in this case, our resolution turns on whether the defendants are entitled to a judgment as a matter of law

## III. Intentional Infliction of Emotional Distress Standard

In order to recover for the intentional infliction of emotional distress under Louisiana law, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe: and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substan-

tially certain to result from his conduct. *White v. Monsanto Co.* 585 So.2d 1205, 1209 (La.1991). If there is not a genuine issue for trial on any one of the three elements required for the intentional infliction of emotional distress, then we should grant summary judgment for the defendants.

### A. Extreme and Outrageous Conduct

The Louisiana Supreme Court in *White* defined the standard for "extreme and outrageous" conduct:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Id.*, quoting Restatement (Second) of Torts § 46 cmt. d (1965).

■ The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect her interests. *White*, 585 So.2d at 1209–10. Many cases have involved circumstances arising in the workplace. "A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *Id.* at 1210.

■ Disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, are not ordinarily actionable. *Id.* Courts have usually limited recognition of a cause of action for the intentional infliction of emotional distress in a workplace to cases involving "a pattern of deliberate, repeated harassment over a period of time." *Id.*, citing *Maggio v. St. Francis Medical Center, Inc.*, 391 So.2d 948 (La.App.2nd Cir.1981); *see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La.1992); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 515–16 (5th Cir.1994). This has been characterized as a sliding scale approach under which even "mild" harassment may become tortious if continued over a substantial time period. *Bustamento*, 607 So.2d at 538.[2]

### B. Texas Standard Compared

■ Defendants ask this court to adopt Texas law concerning intentional infliction of emotional distress in the employment context. Under Texas law, there is no action when the allegations of intentional infliction of emotional distress fall within the realm of an "ordinary employment dispute." *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir.1996). The range of behavior covered in "employment disputes" is quite broad, including employer review, supervision, criticism, demotion, transfer, discipline, and termination of employees. *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992).

■ We suspect that if we were applying Texas law, Glenn's allegations would be classified as an employment dispute and thus dismissed perfunctorily. We find, however, that Louisiana has not adopted the rigid exclusion of employment-based claims for intentional infliction of emotional distress. To the contrary, the Louisiana Supreme Court has suggested that a greater degree of protection is owed employees subject to extreme

---

**2.** We join numerous other courts and commentators in noting that "outrageous conduct" is a nebulous concept. Several commentators have suggested that sexual harassment should be considered "outrageous per se." Schoenheider, *A Theory of Tort Liability for Sexual Harassment in the Workplace*, 134 U. Pa. L.Rev. 1461, 1482 (1986); Prosser and Keaton, *The Law of Torts* § 12 (5th Ed.1984 & Supp.1988). Arguably such a standard would create a britt line for the courts and potential harassers. It might also convert every workplace disagreement into an instant lawsuit. In any case, we are not compelled to distinguish gender-based harassment as per se outrageous compared to racial harassment or other vituperative conduct.

and outrageous conduct from their employer. *White*, 585 So.2d at 1210. We accordingly turn to an analysis of Glenn's claims under Louisiana law.

### C. *Analysis*

■ Although Louisiana cases finding extreme and outrageous conduct by employers are few and far between, Glenn asserts that this case is analogous to *Maggio v. St. Francis Medical Center, Inc.*, 391 So.2d 948. She contends that the defendants' conduct was extreme and outrageous in that it constituted a pattern of deliberate, repeated harassment over a substantial period of time. Glenn in effect admits that no single action by the defendants served as the triggering "extreme and outrageous" conduct.[3] This is just as well, as we find that no single act by the defendants constituted extreme and outrageous conduct under Louisiana law.[4]

In *Maggio*, a work supervisor, Sister Magdalen, intentionally caused a medical center employee, Maggio, to become involved in illegal activity and to breach an ethical duty. Maggio discovered that his supervisor was illegally transferring patient overpayment funds to an account out of the country. When Maggio advised Sister Magdalen's superiors of the circumstances, she engaged in a pattern of outrageous, harassing retaliatory conduct in an effort to cover up her wrongdoing. 391 So.2d at 950. The retaliation included demoting Maggio to a menial position, moving his office to a secluded area, and eventually terminating his employment. *Id.* at 949–50. The court denied the defendants' motion for summary judgment on Maggio's intentional infliction of emotional distress claim. *Id.* at 950.

We find the facts of this case to be more similar to *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049, 1050 (La.App. 3rd Cir.1992), *writ denied*, 598 So.2d 356 (La. 1992), than to *Maggio*. In *Beaudoin*, the court found that an employer's conduct was not extreme and outrageous where he regularly raised his voice and cursed a female employee, and called her names such as dumb and stupid, went into violent, screaming rages, and made statements about her appearance, such as calling her fat. *Id.* at 1050.

The defendants' conduct in this case was inappropriate and inconsiderate, but we find as a matter of law that it did not rise to the level of being extreme and outrageous. Although we have rejected the defendants' suggestion of a per se rule against the tort of intentional infliction of emotional distress in ordinary workplace disputes, employees, like all adults in our society, must be hardened to occasional acts of rough language and inconsiderate and unkind treatment. Here, the defendants' conduct amounted to no more than a peccadillo.

Having found an absence of outrageous conduct, we do not address the other two elements required for the intentional infliction of emotional distress.

### IV. *Conclusion*

In that the defendants' actions did not constitute extreme and outrageous conduct, the defendants' motion for summary judgment on the plaintiff's claim for intentional infliction of emotional distress is GRANTED and the plaintiff's suit is DISMISSED with prejudice.

---

**3.** Cases involving single instances of outrageous conduct, such as *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir.1989) (employer planted company checks on plaintiff to make it appear that she was stealing from the company), and *Wilson v. Monarch Paper Co.*, 939 F.2d 1138 (5th Cir.1991) (plaintiff was purposefully humiliated by being demoted from vice president of a company to a janitorial position), are accordingly not directly on point. Of course, where one instance of "mild," let alone outrageous conduct is repeated for a substantial period of time, the test for "extreme and outrageous conduct" might

also be satisfied. *See Bustamento*, 607 So.2d at 538.

**4.** *See White*, 585 So.2d at 1210–11 (employer's one-minute outburst of crude, rough, and uncalled for profanity directed at his employees did not constitute extreme and outrageous conduct); *Trahan v. Bellsouth Telecommunications, Inc.*, 881 F.Supp. 1080, 1085 (W.D.La.1995) (conduct not outrageous where employer used sarcasm, ridicule, teasing, and taunting during a nine-hour interrogation of an employee).