607 So.2d 532 (1992)
Deretha BUSTAMENTO
v.
J.D. TUCKER, Jeff Hall, Marc Iott and Johnson Controls, Inc.
No. 92-C-0523.
Supreme Court of Louisiana.
October 19, 1992.
Rehearing Denied November 25, 1992.
*534 John Milkovich, for applicant.
Joseph L. Shea, Jr., Philip E. Downer, III, Hargrove, Guyton, Ramey & Barlow, Jerald R. Harper, Cook, Yancey, King & Galloway, Scott C. Trotter, Youngdahl, Trotter, McGowan, O'Connor & Farris, Troy Bain, for respondents.
HALL, Justice.
Plaintiff filed this tort action for intentional infliction of emotional distress against her employer, supervisor, union representative, and co-worker in February 1988, alleging that her co-worker had subjected her to almost daily incidents of sexual harassment over a two-year period; that her supervisor and union representative had not only failed to curtail or stop such harassment, but also had condoned and encouraged it; and that her employer, despite its awareness of her complaints, had failed to take any responsible actions to eradicate such harassment. The district court sustained defendants' exception of prescription and dismissed plaintiff's suit. On plaintiff's appeal, the court of appeal, in an unpublished opinion, affirmed. 592 So.2d 514 (La.App. 2d Cir.1992). We granted plaintiff's application for writs, 598 So.2d 343 (La.1992), and now reverse in part and remand.

I.
The pleadings and evidence in the record disclose the following facts. In January 1985, Deretha Bustamento went to work as a janitor for Johnson Controls, Inc., a vehicle seat manufacturing company located in Shreveport, Louisiana. Shortly thereafter, J.D. Tucker, a forklift operator at the plant, began a pattern of harassing Ms. Bustamento during working hours at the workplace. Tucker's harassment allegedly persisted on an almost daily basis over a two year period, and was so severe that it often reduced Ms. Bustamento to tears and eventually rendered her emotionally distraught.
According to Ms. Bustamento, Tucker's harassment over the course of this two year span was both verbal and physical. Verbally, he repeatedly cursed at her; made improper sexual comments, innuendos and advances at her; invaded her privacy by questioning her regarding her marital affairs and sexual relationship with her husband; and threatened her with physical violence, including to rape her, to run her out of the plant, and to run over her with his forklift. Physically, he used his forklift to terrorize her: driving it at her, attempting to run over her with it, and pinning her against the walls of the plant and against stacks of pallets with it. On one occasion, he slapped her on the buttocks. Corroborating *535 testimony for some of these incidents came from another co-worker, Brenda Fefel.
During the two year period, Ms. Bustamento complained to management at Johnson Controls and consulted several attorneys regarding the harassment. In 1985, Ms. Bustamento consulted an attorney who advised her of her rights and wrote a letter to Johnson Controls regarding the alleged sexual harassment. A memorandum dated February 16, 1986, documents Ms. Bustamento's complaints to her supervisor, Marc Iott. This memorandum reflects that on this occasion, Iott instructed Tucker "that he was not to curse at Deretha and should not do anything to make her feel threatened." Also, on this occasion, Iott warned Tucker that any further harassment would place his job in jeopardy. This memorandum further reflects that Tucker had a poor track record and had previously been warned.
The next complaint reflected in the record was made on February 27, 1987. On that date, Ms. Bustamento, accompanied by Ms. Fefel, went to Iott again complaining of Tucker's harassment. On this occasion, Iott informed her to immediately notify him of any further harassment. Ms. Fefel testified that on or about that same day she drove Ms. Bustamento, who was too upset to drive herself, to the office of attorney Laurie Lyons. Because of Ms. Bustamento's visibly shaken condition at the time of their consultation, Ms. Lyons referred Ms. Bustamento to a psychiatrist. According to Ms. Bustamento, the psychiatrist diagnosed her as being on the verge of a nervous breakdown.
The final complaint was made on March 3, 1987. On that date, Ms. Bustamento went into an emotional state over something Tucker allegedly did to her that morning at the New Plant.[1] No one (not even Ms. Bustamento; her attorney, Ms. Lyons; or her co-worker, Ms. Fefel) could recall the details of this incident. Nonetheless, Ms. Bustamento responded to this incident by calling her attorney, Ms. Lyons, and requesting that Ms. Lyons come to the New Plant to meet with Iott. On that particular day, Ms. Lyons' workload was especially stacked up as she had just had a baby. Nonetheless, precipitated by plaintiff's frantic call, Ms. Lyons dropped what she was doingsomething she testified that she rarely does for a client unless something important is going onand went to the New Plant for the purpose of putting an end to the on-going harassment.
While the parties bitterly dispute what, if anything, occurred at the New Plant on March 3rd, the record reflects the following. Ms. Bustamento directly testified that Tucker cursed her at the New Plant and that she was certain it was something Tucker did that precipitated her call to Ms. Lyons. While Iott testified that Ms. Bustamento indicated to him in the March 3rd meeting that nothing occurred that morning, Ms. Lyons testified that she was certain that she would have recalled her client having made such a statement because she would have been angered to learn that her immediate presence was not required at the plant on that date. Iott conceded that during the March 3rd meeting, Ms. Lyons informed him that the harassment was ongoing. Tucker testified that on the next day, March 4, 1987, Iott admonished him and warned him that if his wrongful conduct did not cease, he would be fired; this warning is documented in a memorandum of the same date. And, it is undisputed that after the March 3rd meeting, Tucker's conduct ceased.

II.
On February 29, 1988, Ms. Bustamento filed this suit, seeking to recover for the severe emotional distress she suffered as a *536 result of Tucker's harassment, and naming as defendants Johnson Controls; Iott; Tucker; and Hall, a co-worker and the union representative.[2] In response, defendants filed exceptions of prescription, contending that all of the complained of conduct occurred more than one year before plaintiff filed this suit.[3]
After an evidentiary hearing, the district court maintained the exceptions, dismissing plaintiff's action. In its written reasons for judgment, the district court capsulized the relevant events occurring inside the prescriptive period and concluded that, for prescription purposes, the critical date was March 3, 1987.
Bustamento filed her original petition on February 29, 1988. She has stipulated that no tortious act occurred after March 3, 1987. Thus, if a tortious act was to have occurred within the year prior to filing suit, it must have occurred on March 1, 2 or 3, 1987. Bustamento did not even work on Saturday, February 28, 1987, or Sunday, March 1, 1987. While she worked a full day on March 2, 1987, Bustamento was only at the plant from 6:00 a.m. until Noon on March 3, 1987, that being the day Bustamento called her attorney, Laurie Lyons ("Lyons") (at 10:00 a.m.), to come to the plant. Bustamento further testified that there was only one day during the pertinent period on which she complains of Tucker's conduct, this being March 3, 1987, the date Lyons visited the plant.
The district court framed the issues as two-fold: first, whether a tort had occurred within the one-year prescriptive period; and second, if so, whether the continuing tort doctrine applies to the facts of this case. Based on plaintiff's testimony, the district court found that all the complained of tortious conduct occurred at the Old Plant, and thus outside the prescriptive period, with the possible exception of plaintiff's claim of a "cussing" on March 3rd at the New Plant.[4] The district court further found that "[w]hile the vile and profane acts complained of by plaintiff would certainly constitute a cause of action against one or more of the defendants, defendants have shown by a preponderance of the evidence that no harassment or acts of abuse took place within one year of filing suit[, that is, on March 3]." Based on this conclusion and its belief that a prerequisite for invoking the continuing tort doctrine is the occurrence of at least one act of tortious conduct within the year immediately preceding filing suit, the district court pretermitted consideration of the second issue of whether the continuing tort doctrine applies.
The court of appeal affirmed in an unpublished opinion. The court began by separately addressing the issue of whether plaintiff's claim against the union representative, Hall, was prescribed. Answering this question in the affirmative, the court reasoned that "[n]o witness testified of any tortious conduct by Mr. Hall within the one-year period prior to the filing of the plaintiff's suit. Therefore, the claims against defendant Hall are clearly prescribed, and the trial court properly dismissed him from the suit." We agree and affirm this finding.[5]
*537 As to the remaining defendants, the court of appeal framed the issue as whether the district court had committed manifest error in resolving the conflicting testimony regarding the March 3rd incident to find that no tort occurred on that date. Answering this question in the negative, the court concluded that the record supported the district court's finding that no tort occurred on that date. The court also concluded that even assuming, as suggested by the district court, that a "cussing" occurred on March 3rd, it would not necessarily be actionable under White v. Monsanto Co., 585 So.2d 1205 (La.1991); the court opined:
Not every verbal encounter can be converted into a tort. One of the elements required for recovery for intentional infliction of emotional distress is that the conduct be outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. White v. Monsanto, 585 So.2d 1205 (La.1991). Without knowing exactly what, if anything, Mr. Tucker allegedly said to the plaintiff, it would be impossible to determine whether a tort occurred on March 3, 1987 which could have interrupted prescription.
Despite the court's conclusion that Ms. Bustamento's claim had prescribed because no tort occurred within the one-year window, the court nonetheless addressed the applicability of the continuing tort doctrine. The court noted that in South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La.1982), this court held that for the continuing tort doctrine to apply both the tortious conduct and the resulting damages must be continuous. Classifying the complained of conduct in this case as discontinuous, consisting of intermittent incidents, the court of appeal found the continuing tort doctrine inapplicable. In finding the continuing tort doctrine inapplicable, the court of appeal compared the complained of conduct in this case to the continuous conduct in South Central Bell, supra, a property damage case; and to the discontinuous conduct in Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir.1987), a sexual assault and battery case; and Crosby v. Keys, 590 So.2d 601 (La.App. 2d Cir.1991), writ denied, 593 So.2d 373 (La.1992), a sexual abuse case:
We find that the tortious conduct claimed by the plaintiff is similar to the physical and verbal abuse in Laughlin and the sexual abuse in Crosby in that it involved separate, if frequent, incidents. Each act gave rise to a cause of action. This conduct cannot be described as continuous within the meaning of South Central Bell Telephone Company, supra. Consequently, we find that the continuing tort doctrine is inapplicable to the facts of this case.
Thus, the court of appeal found that Ms. Bustamento's claim as to the remaining defendants was prescribed. For the reasons detailed below, we find that Ms. Bustamento's claim as to the remaining defendants has not prescribed.

III.
The sole issue before us is whether Ms. Bustamento's action for intentional infliction of emotional distress resulting from sexual harassment over a two-year span is barred by LSA-C.C. 3492's one-year prescriptive period. At the outset, we note that under Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. Lima v. Schmidt, 595 So.2d 624, 629 (La.1992) (collecting cases).
*538 Resolution of the prescription issue before us hinges upon a determination of whether, as found by the court of appeal, each of the alleged incidents of harassment constitutes a separate cause of action, with prescription running from the date of each separate incident; or whether, as Ms. Bustamento contends, the entire course of harassment constitutes a single cause of action, with prescription running from the date of the last incident or abatement of the course of conduct. To make this determination, an analysis of the nature of Ms. Bustamento's cause of action is necessary. See Marquette Casualty Co. v. Brown, 235 La. 245, 246-48, 103 So.2d 269, 270 (1958) (noting that "to determine ... when the prescription commences to run, it is essential first to ascertain the nature of the claim plaintiff seeks to enforce").
Ms. Bustamento bases her claim upon the tort of intentional infliction of emotional distress. To establish this tort, the plaintiff must show outrageous conduct by the defendant causing serious emotional harm to the plaintiff. White v. Monsanto Co., 585 So.2d 1205 (La.1991) (adopting Restatement (Second) of Torts § 46).[6] In White, supra, we acknowledged that this tort could occur in the workplace environment, although the brief, spontaneous conduct there did not rise to the level of being tortious. Indeed, we noted that "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." 585 So.2d at 1210.
The rationale underlying our generalization in White, supra, regarding repeated conduct is that conduct which, viewed as an isolated incident, would not be outrageous or would not be likely to cause serious damage, can become such when repeated over a period of time. See Restatement (Second) of Torts § 46, Comment (j) (noting that both the intensity and the duration of the distress are factors to be considered in determining whether a pattern of conduct is actionable). This has been characterized as a sliding scale approach under which even relatively "mild" harassment may become tortious if continued over a substantial time period. Montgomery, Sexual Harassment in the Workplace: A Practitioner's Guide To Tort Actions, 10 Golden Gate U.L.Rev. 879, 890 (1980).
Ms. Bustamento alleges just such a case. She alleges that defendant Tucker engaged in a pattern of on-going, repeated harassment which gradually caused her serious emotional injury. It would be entirely inconsistent to say that such cumulative, continuous acts constitute a tort, but that prescription runs from the date of each distinct act. Indeed, it would be most difficult to pin-point the specific moment in time when such continuous conduct became sufficiently outrageous, and such continuing damages rose to the level of severity, to become actionable and thus to commence the running of prescription.[7] Thus, we find Tucker's alleged actions constitute a pattern of conduct analogous to the continuing *539 trespass or nuisance situations discussed in South Central Bell, supra, and we find the practical rule adopted in those property damage cases that prescription does not run until such continuous conduct is abated applies.[8] Simply put, we find the continuous nature of the alleged conduct has the dual effect of rendering such conduct tortious and of delaying the commencement of prescription.
Consistent with our finding here is the First Circuit's holding in Brown v. Vaughn, 589 So.2d 63 (La.App. 1st Cir. 1991). In Brown, supra, the court was presented with an almost identical issue. There, the alleged sexual harassment consisted of statements or advances of a sexual nature directed at the plaintiff, Ms. Brown, by her supervisor, Vaughn. Ms. Brown alleged five specific incidents of sexual harassment, only one of which occurred within the applicable one-year prescriptive period. Finding that each of the alleged incidents constituted "separate and independent tortious acts," the district court found Ms. Brown's claim, insofar as it was based on conduct outside the prescriptive period, was barred. Reversing, the First Circuit found that Ms. Brown's claim was based on the entire course of harassment. In reaching this conclusion, the court engaged in a detailed analysis of the nature of Ms. Brown's cause of action. As we find the Brown court's analysis cogent and well-reasoned, we summarize it in detail below.
Ms. Brown's claim was based upon LSA-R.S. 23:1006, the Louisiana anti-discrimination statute, which prohibits intentional job discrimination.[9] As expounded in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), there are two types of sexual harassment in the workplace: (1) quid pro quo harassment, which consists of employment or economic favors given in exchange for sexual favors; and (2) hostile environment harassment, which consists of verbal or physical conduct that has the effect of creating an intimidating, hostile or offensive environment. 589 So.2d at 65. Pigeonholing Ms. Brown's claim as falling within the latter category,[10] the court outlined the parameters of such a claim:
The type of conduct constituting such [hostile environment] harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.... Every act of harassment, although reprehensible, does not necessarily *540 give rise to a hostile environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment. Meritor, [477 U.S. at 63-66] 106 S.Ct. at 2404-5.
In general, hostile environment harassment is characterized by multiple and varied incidents of offensive conduct which have the cumulative effect of creating a hostile working environment for the employee thus victimized. See Rabidue v. Osceola Refining Co., 805 F.2d 611, 620 (6th Cir.1986).
Id.[11]
Based on its analysis of the nature of Ms. Brown's hostile environment claim, the court concluded that the trial court's characterization of each of the five alleged incidents of sexual harassment as a separate tort was erroneous, reasoning that "it was the pattern of harassment and the combination of these incidents that gave rise to plaintiffs' claim for harassment." Id. Continuing, the court stated that "these incidents, with one or two possible exceptions, were [not] of sufficient severity to separately comprise an independent claim for harassment, whereas taken together, they may be of sufficient severity and pervasiveness to establish such a claim." Id.
The First Circuit in Brown, supra, also distinguished its jurisprudence, Laughlin, supra, on which the district court (as did the court of appeal in this case) relied in support of its finding that each of the alleged incidents of sexual harassment was a separate tort:
In Laughlin, this panel held that although several different incidents of physical abuse combined to produce the plaintiff's Battered Woman's Syndrome, each instance of physical abuse constituted a separate assault and battery giving rise to a separate cause of action, so that prescription ran as to each assault and battery from the time of its occurrence. Laughlin, 515 So.2d at 482. The present case is clearly distinguishable in view of our conclusion that each of the alleged incidents of Vaughn's misconduct, in contrast to Laughlin where each assault and battery was clearly a separate tort, did not constitute a separate cause of action for harassment, but rather, that it was the pattern of harassment which gave rise to plaintiffs' hostile environment claim.
589 So.2d at 65. Thus, the First Circuit held that Ms. Brown's claim filed within a year of the last incident was timely as to her entire claim for sexual harassment.
As in Brown, supra, we find the court of appeal's reliance on Laughlin, supra,[12] to find each incident of harassment alleged by Ms. Bustamento constitutes a separate tort is misplaced. The complained of conduct in Laughlin, supra, consisted of separate and distinct acts, each of which gave rise to immediately apparent damages, resulting in the accrual of a separate cause of action when they occurred. In contrast, here, as in Brown, supra, it is the cumulation of acts and conduct, and the resulting cumulation of damages, that transforms the individual incidents of harassment into an actionable tort. We, therefore, find the court of appeal's holding that each of the alleged incidents constituted a separate tort erroneous.
*541 While Brown, supra, was brought under a specific statutory provision for intentional discrimination, LSA-R.S. 23:1006, and Ms. Bustamento's claim is brought under Louisiana tort law for intentional infliction of emotional distress, we find that, for prescription purposes, this is a distinction without a difference. First, the essence of Ms. Bustamento's claim, like Ms. Brown's claim, is sexual harassment in the workplace resulting in the creation of a hostile work environment.[13] Second, LSA-R.S. 23:1006, on its face, is restricted to intentional conduct. Third, the provision in LSA-R.S. 23:1006 permitting a plaintiff to recover general damages has been construed as contemplating recovery for emotional distress. Branch-Hines v. Hebert, 939 F.2d 1311, 1317-19 (5th Cir.1991). Finally, LSA-R.S. 23:1006 has been construed to provide a tort action governed by the one-year prescriptive period set forth in LSA-C.C. Art. 3492. Williams v. Conoco, Inc., 860 F.2d 1306, 1307 (5th Cir.1988). Thus, the different form of action elected by Ms. Bustamento does not dictate a different result.
Waltman v. International Paper Co., 875 F.2d 468 (5th Cir.1989), cited by Ms. Bustamento, likewise lends support to our finding. Waltman, supra, was a sexual harassment suit under Title VII in which pendent claims were asserted for, among other things, intentional infliction of emotional distress and violation of LSA-R.S. 23:1006.[14] In refusing to dismiss these pendent claims as prescribed under LSA-C.C. Art. 3492, the Waltman court relied upon the exception for continuing torts set forth in South Central Bell, supra. Moreover, the court analogized this exception to the continuing violation theory, an equitable exception to the 180-day period for filing a Title VII claim that applies "`[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'" 875 F.2d at 474 (quoting Abrams v. Baylor College of Medicine, 805 F.2d 528, 532 (5th Cir.1986)).
Significantly, the Waltman court noted that hostile environment claims are often based on continuing violations because "[i]n a hostile environment, an individual feels constantly threatened even in the absence of constant harassment." 875 F.2d at 476. A logical corollary is that once a pattern of harassment has created a psychologically offensive work environment, the status quo of such continuous wrongful conduct can be based on the harasser's mere presence. This notion of a harasser's mere presence being actionable was expressly recognized in Ellison v. Brady, 924 F.2d 872 (9th Cir.1991). There, *542 the court noted that "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment." 924 F.2d at 883. The Ellison court noted that to avoid liability for failing to remedy a hostile environment, "employers may even have to remove employees from the workplace if their mere presence would render the working environment hostile." Id.; See generally Note, Workplace Sexual Harassment: The Ninth Circuit's Reasonable Woman Standard and Employer Remedial Actions in Hostile Environment Claims Following Ellison v. Brady, 28 Willamette L.Rev. 151, 167-68 (1991).[15]
Summarizing the above precepts, we find that in an action for intentional infliction of emotional distress resulting from sexual harassment, when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated.

IV.
Having found that prescription did not commence to run on Ms. Bustamento's claim until the continuous conduct abated, we must now determine the date on which such abatement occurred. Before addressing the factual issue of when the conduct abated, however, we refute defendants' procedural contention that the lower courts erred in failing to place the burden of proof on this factual issue on Ms. Bustamento. In support of this contention, defendants cite the principle that when the petition on its face reveals the plaintiff's claim has prescribed, the burden of proving a suspension or an interruption of prescription is on the plaintiff. Defendants' reliance on this principle is misplaced. When, as here, the plaintiff's petition alleges a continuous course of conduct that did not cease to exist until within the year preceding the filing of the suit, the plaintiff's action is not prescribed on the face of the petition; hence, the burden of proof is on the defendant or the party pleading prescription to establish the facts necessary to sustain the plea. Pearson v. Hartford Accident & Indemnity Co., 281 So.2d 724 (La.1973); Strata v. Patin, 545 So.2d 1180, 1189 (La. App. 4th Cir.), cert. denied, 550 So.2d 618 (La.1989); See also Chaney v. State Through Dept. of Health and Human Resources, 432 So.2d 256, 259-60 (La.1983) (applying similar rule regarding date on which it was alleged plaintiff acquired knowledge of tortious act).
On the merits of this issue, Ms. Bustamento contends that the continuous conduct did not abate until after the March 3rd meeting at the New Plant, which marked the point at which Tucker's harassment ceased. Conversely, defendants, supported by the court of appeal, contend that they have met their burden of proof by establishing that no tortious act occurred within the prescriptive period. More particularly, defendants contend that Ms. Bustamento's harassment claim is prescribed since the only alleged conduct within the one-year window was an unamplified cursing incident. Defendants cite jurisprudence to the effect that such an unamplified cursing is not actionable. See White, supra; Roshto v. Bajon, 335 So.2d 486 (La.App. 1st Cir. 1976). Agreeing with defendants, the lower courts found that even assuming such a cursing incident occurred, the incident would not have been actionable.
The problem with defendants' contention, and the lower courts' holdings, is that they overlook the continuing nature of the complained of conduct and fail to consider the March 3rd incident in the context in which it occurred: an allegedly hostile work environment created by a continuing course of conduct. They also overlook that it is the *543 pattern of harassment, not any individual incident, that gives rise to Ms. Bustamento's claim for intentional infliction of emotional distress. Thus, the court of appeal's focus on the March 3rd cursing incident in isolation, and its resulting conclusion that such incident could not be actionable, is erroneous as it is based on an incorrect theory of the law of intentional infliction of emotional distress in the workplace.
While each incident alleged by Ms. Bustamento may not necessarily be classified as "outrageous," when her allegations are viewed properly as a whole,[16] consisting of a continuing flow of related acts, by the same actor, stretching across a two-year span, the cumulative effect of them could serve to render such actions "outrageous" and actionable under White, supra. Moreover, the last act, just as previous acts of harassment, does not have to be in and of itself actionable, but rather need only be an act in furtherance of the continuing pattern of harassment so as to indicate that the harassment has not abated. See Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600, 603 (1951); See also Wilson v. Hartzman, 373 So.2d 204 (La. App. 4th Cir.), writ refused, 376 So.2d 961 (La.1979).
Without resolving the conflicting testimony regarding the events at the New Plant on March 3, 1987, we find that the evidence preponderates that something occurred on that date in furtherance of the on-going harassment, albeit perhaps only a cursing. Our finding that something occurred is evidenced by the following chain of events on that date. First, both Ms. Bustamento and Tucker were at work that morning at the New Plant. Second, something occurred that morning which sent Ms. Bustamento into an emotional state and precipitated Ms. Bustamento calling her attorney. Third, that phone call precipitated the attorney, whose work was stacked up that day, to rush out to the plant. Fourth, a meeting took place that date among Ms. Bustamento, her attorney, and Iott. Fifth, on the next day, Tucker was admonished both orally and in writing. Finally, after that meeting Tucker's conduct ceased. Our finding that something occurred is further supported by Ms. Bustamento's direct testimony that Tucker cursed her at the New Plant, as well as by the district court's apparent acceptance that a cursing occurred.
Based on the above, we find that the alleged on-going harassment that ultimately caused Ms. Bustamento serious emotional injury continued through March 3rd and did not abate until after the meeting at the New Plant on that date, which was less than one year before this suit was filed. Thus, the one-year prescriptive period had not run, and this suit was timely.

IV.
For the reasons assigned, the judgment of the district court as affirmed by the court of appeal is affirmed in part insofar as it sustained the exception of prescription and dismissed the plaintiff's suit against the defendant Jeff Hall, but is reversed insofar as it maintained the exception of prescription and dismissed the plaintiff's suit against the remaining defendants. As to the remaining defendants, the exception of prescription is overruled, and the case is remanded to the district court for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Over the weekend of Saturday, February 28, and Sunday, March 1, 1987, Johnson Controls moved its operations from its original location on Julie Frances Road (the "Old Plant") to a new facility on West Park (the "New Plant"). The move is significant because it provides a convenient bench-mark for our analysis: All the complained of conduct occurring at the Old Plant took place on or before February 28, 1987, thus, occurring outside the one-year prescriptive period. Conversely, all the conduct occurring at the New Plant took place in March 1987, thus, falling inside the prescriptive period.
[2] By amended petition, Johnson Control's liability insurer, American Motorists Insurance Company, was also joined as a defendant. Also by amended petition, it was alleged that Hall independently harassed Ms. Bustamento.
[3] Defendant Hall additionally filed a peremptory exception of no cause of action and a dilatory exception of prematurity based primarily on federal labor law. Apparently in response to Hall's exceptions, plaintiff dismissed all references to federal claims and expressly limited her action to Louisiana state law tort claims. Finding plaintiff's claim against Hall prescribed, the lower courts did not address Hall's other arguments. While Hall reurges such arguments before this court, we likewise find it unnecessary to reach such arguments since we, as discussed below, affirm the lower courts' finding that plaintiff's claim against Hall is prescribed.
[4] See discussion in Note 1 regarding the significance of events occurring at the New Plant.
[5] We note that plaintiff's contention that Hall is a solidary obligor with the other defendants and that a finding that the suit is timely as to the other defendants thus renders the suit timely as to Hall is erroneous. Once prescription has run, it cannot be interrupted. "Timely suit against one solidary obligor does not interrupt prescription that has run against another solidary obligor." Noggarath v. Fisher, 557 So.2d 1036, 1037 (La.App. 4th Cir.1990). Thus, our reference to the defendants in the remainder of this opinion, and our conclusion below that prescription did not accrue as to the other defendants, does not apply to Hall. As an aside, we note that since Hall was a non-supervisory, co-worker of plaintiff, there is no legal theory under which he could be held vicariously or derivatively liable to plaintiff for the other defendants' acts.
[6] We note that outrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct and it may even refer to a pattern of conduct. See Schoenheider, A Theory of Tort Liability for Sexual Harassment in the Workplace, 134 U.Pa.L.Rev. 1461, 1481 (1986) (noting that this extremely vague standard is the greatest obstacle to recovery for sexual harassment under this tort). While courts continue to decide this issue on a case-by-case basis, several commentators have boldly asserted that sexual harassment should be considered "outrageous per se." Id. at 1482; Prosser and Keaton, The Law of Torts § 12 (5th Ed.1984 & Supp.1988); Montgomery, Sexual Harassment in the Workplace: A Practitioner's Guide To Tort Actions, 10 Golden Gate U.L.Rev. 879, 894 (1980).
[7] Identifying this specific moment in time has been held to be a thorny factual issue. See Continental Casualty Insurance Co. v. McDonald, 567 So.2d 1208, 1216-17 (Ala.1990) (adopting continuing tort theory and noting that "earlier conduct, not necessarily actionable as outrage initially, could be brought within a later-filed action as part of an ongoing pattern or scheme, at least where the earlier injuries or damages are not discrete or severable from the later ones"); See also Murphy v. Allstate Insurance Co., 83 Cal.App.3d 38, 51, 147 Cal.Rptr. 565, 575-76 (4th Dist.1978); Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1292 (9th Cir.1987).
[8] In South Central Bell, supra, the continuous tortious conduct consisted of leaky underground storage tanks owned by defendants that were causing continuing damages to Bell's phone lines. There, we held that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." 418 So.2d at 533. The underlying basis for this rule, which has its roots in property damage cases, has been summarized as follows:

Louisiana decisions draw a distinction between damages caused by continuous, and those caused by discontinuous, operating causes. When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. See South Central Bell Telephone Co. v. Texaco, 418 So.2d 531 (La.1982), and cases cited therein. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage. See A.N. Yiannopoulos, Predial Servitudes, § 63 (1982).
Official Revision Comment (c) to LSA-C.C. Art. 3493.
[9] As this statute is similar in scope to the federal prohibition against discrimination set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), Louisiana courts have looked to the jurisprudence construing the federal statute in determining whether a plaintiff has stated a cause of action for sex discrimination under LSA-R.S. 23:1006. Williams v. Conoco, Inc., 860 F.2d 1306, 1307 (5th Cir.1988) (collecting cases).
[10] We likewise pigeonhole Ms. Bustamento's claim as falling within the hostile environment category. Indeed, two factors that distinguish that category from quid pro quo harassment are applicable here: a co-worker committed the harassment, and it occurred over a period of time. Dworkin, Ginger & Mallor, Theories of Recovery for Sexual Harassment: Going Beyond Title VII, 25 San Diego L.Rev. 125, 128 (1988).
[11] The paradigm hostile work environment claim involves "sexual propositions, offensive touchings, or sexual conduct of a similar nature that was systematically directed to the plaintiff over a protracted period of time." Rabidue v. Osceola Refining Co., Division of Texas-American Petrochemicals, Inc., 805 F.2d 611, 622 n. 7 (6th Cir.1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); See Comment, Gender Based Harassment and the Hostile Work Environment, 1990 Duke L.J. 1361, 1382.
[12] The court of appeal also relied on Crosby, supra. Crosby adopted the reasoning in Laughlin to find that repeated acts of sexual abuse each constituted a separate tort. Thus, the discussion above distinguishing Laughlin from the instant case is equally applicable to Crosby. As an aside, we point out that while in both Laughlin and Crosby, the courts classified the complained of incidents as separate torts, in both cases the courts also indicated that the district court could consider evidence of the prescribed incidents in assessing damages on any of the incidents that were not prescribed. Laughlin, 515 So.2d at 483-84; Crosby, 590 So.2d at 603 n. 2.
[13] While because of the procedural posture of this case we do not reach the merits of Ms. Bustamento's tort claim, we note that courts in other jurisdictions have recognized that a pattern of harassment that creates a hostile work environment can constitute intentional infliction of emotional distress. See Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307, 310 (M.D.Pa. 1988) (highly offensive speech and conduct, coupled with retaliation constitutes outrageous conduct); Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa.1983) (employer's creation of a hostile work environment caused severe emotional distress); Vegh v. General Elec. Co., 34 Fair Empl. Prac. Cas. (BNA) 135 (E.D.Pa. 1983) (plaintiff's supervisor subjected her to "continual harassment including unwelcomed sexual advances, verbal and physical conduct"); Rogers v. Loews L'Enfant Plaza Hotel, 526 F.Supp. 523 (D.D.C.1981) (abusive verbal and physical advances by a supervisor); Rice v. United Ins. Co. of America, 465 So.2d 1100 (Ala. 1984) (pattern of outrageous conduct by employer and supervisor); Howard University v. Best, 484 A.2d 958 (D.C.1984) (dean's sexual harassment of assistant professor); See generally AnnotationLiability of Employer, Supervisor, or Manager for Intentionally or Recklessly Causing Employee Emotional Distress, 52 A.L.R.4th 853 § 7 (1987). We further note that behavior falling short of "outrageousness," and thus not actionable under state tort law, nonetheless has been held to give rise to a Title VII hostile environment claim. See Studstill v. Borg Warner Leasing, Division of Borg Warner Acceptance Corp., 806 F.2d 1005, 1008 (11th Cir.1986); See also Andrews v. City of Philadelphia, 895 F.2d 1469, 1486-87 (3rd Cir.1990).
[14] The assertion in Title VII cases of pendent claims for intentional infliction of emotional distress is a common practice. See 1 L. Larson, Employment Discrimination § 41.67(b) (1984). Indeed, it has been pointed out that "where sexual harassment is asserted, the relationship between tort claims of intentional infliction of emotional distress and Title VII is a strong and obvious one." Dolkart & Malchow, Sexual Harassment in the Workplace: Expanding Remedies, 23 Tort & Ins.Law J. 181, 192 n. 65 (1987).
[15] An employer's continued inaction also has been held to give rise to a claim for intentional infliction of emotional distress. Ford v. Revlon, Inc., 153 Ariz. 38, 734 P.2d 580, 585 (1987) (employer's repeated failure to take appropriate remedial measures, despite its awareness of employee's complaints, sufficiently outrageous to constitute intentional infliction of emotional distress).
[16] In Title VII cases, the courts have held that the determination of whether a hostile environment claim exists must be based not on a consideration of each individual incident in a vacuum, but rather on the "totality of the circumstances." Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3rd Cir.1990) (noting that "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario"); See also Rabidue, 805 F.2d at 620.