**Flora AUGUST, et al.**

v.

**STAR ENTERPRISE, INC.**

**Civ. A. No. 94–3044.**

United States District Court,
E.D. Louisiana.

Oct. 4, 1995.

at the plant before his retirement was September 16, 1993, when Jerry Hilgendorf ("Hilgendorf") replaced Monica as Division Foreman of Division A.

John Courtney Wilson, John Courtney Wilson, Attorney at Law, New Orleans, LA, for Flora August, Edward August, Jr.

William R. D'Armond, Melanie Moreland Hartmann, Theresa R. Hagen, Kean, Miller, et al., Baton Rouge, LA, for Star Enterprise, Inc.

Theresa A. Beckler, Drake, Beckler & Drake, Ponchatoula, LA, for State of Louisiana.

## ORDER AND REASONS

JONES, District Judge.

Defendant Star Enterprise ("Star") has brought this motion for summary judgment seeking dismissal of the plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter was submitted on a previous date without oral argument. Having reviewed the submissions of the parties, the record and the applicable law, the Court DENIES Star's motion for the reasons which follow.

### Background

Plaintiff Flora August ("August") filed this action under the state anti-discrimination statute, La.R.S. 23:1006.[1] August was hired in May 1979 by Texaco, Inc. as an "Outside Operator" for Division A at their oil refinery plant located in Convent, Louisiana ("the Plant"). August subsequently became an employee of Star when Star became the owner of the Plant on January 1, 1989.

Lou Monica ("Monica") became the foreman of Division A in 1985 and was August's supervisor until he retired in 1993. The bulk of the harassment claims in August's complaint relate to claims of alleged harassment by Monica. Monica's last day of actual work

August had been on leave of absence from her position since May 18, 1993. She returned to work on September 20, 1993 and worked for two days, September 20 and 21, before taking another leave of absence. She never returned to work at the Plant. During the two days she worked in September 1993, August did not see Monica, since he was on vacation pending retirement.

On September 21, 1993, August attended a meeting with Larry Hall ("Hall") of the Plant's Human Resources Department and with Hilgendorf, her new supervisor. At the meeting, they welcomed her back to the Plant and told her they wanted to view her return as a "new beginning." (August's deposition, pp. 127–28, Exh. 1, R. Doc. 34). They also told her at the meeting that she should avoid using the term "sir," because it sounded sarcastic, and that she should stop wearing dark sunglasses. August interpreted these requests by Hall and Hilgendorf as a repetition of the same acts of harassment that she previously experienced with Monica. *Id.* at 128. She contends in her affidavit that when she met with Monica and Hall in 1992, Monica allegedly asked her to take off the glasses and complained that August's use of the word "sir" sounded sarcastic and Hall allegedly concurred in Monica's opinion.[2]

Star argues that August's claims have prescribed under the one-year prescriptive period which governs actions under the state anti-discrimination statute. La.R.S. 23:1006. Likewise, Star avers that August's main action along with the derivative claim of her spouse for "lost of consortium" has also prescribed; the children's claims were later dismissed. Defendant contends that August cannot prove that any discriminatory act occurred on September 20 or 21 to constitute a

---

1. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

2. The Court notes that defendant has asked that plaintiff's affidavit should be stricken from consideration here because it is replete with hearsay and unsubstantiated declarations. While it is agreed that a number of allegations in plaintiff's affidavit is based upon inappropriate hearsay and naked assertions, the Court finds that the entire affidavit has not been fatally infected; moreover, this Court has only considered those legally appropriate portions of the affidavit to reach its decision.

part of a deliberate and repeated pattern of harassment based on her gender and race which created a hostile working environment at the plant. August counters that the September 21, 1993 incident constitutes a continuation of a deliberate, repeated pattern of harassment. Accordingly, August asserts that her claim has not prescribed under the "continuing tort doctrine."

Star posits that plaintiff's subjective interpretation of Hall's request is not evidence of hostile or abusive harassment. Consequently, plaintiff's claims have prescribed and Star is entitled to summary judgment. Suit was filed on September 20, 1994 while August was on paid leave for long-term disability.

## Law and Application

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion and of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury or factfinder could return a verdict for the non-moving party. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The Court reviews the evidence bearing on the factual issues, viewing the facts and inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Id.*

■ The issue is whether August's action under the anti-discrimination statute is barred by La.C.C. Art. 3492's one-year prescriptive period. In addressing this issue, it is well-settled Louisiana jurisprudence that "prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining as opposed to barring an action should be adopted." *Bustamento v. Tucker,* 607 So.2d 532, 537 (La.1992) (citing *Lima v. Schmidt,* 595 So.2d 624, 629 (La.1992)). To survive the defendant's claim for summary judgment based upon defendant's allegation that plaintiff's claims have prescribed, plaintiff must establish a *prima facie* case that the particular utterances and conduct of September 21, 1993, were not isolated incidents but a part of a deliberate, repeated pattern of harassment and a continuing violation. *See Harris v. Forklift Systems, Inc.,* — U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), (*citing Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In other words, August must "make a showing sufficient to establish the putative existence of every element that is essential to her case." *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1084–85 (5th Cir.1994).

■ Moreover, in order to support a finding of a continuous violation, the plaintiff must show, *prima facie,* a series of continuous violations constituting an organized scheme leading to a present violation. *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983). To establish a *prima facie* case of disparate treatment under Title VII, two methods exist: direct and indirect or inferential. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the direct method, the Fifth Circuit defined direct evidence as "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993). As the court in *Chevron,* 14 F.3d at 1085, noted, the Supreme Court has defined the kind of comments that constitute direct evidence of gender discrimination. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 235, 109 S.Ct. 1775, 1782, 104 L.Ed.2d 268 (1989). In the *Price Waterhouse* case, the Court found that comments such as plaintiff was "macho," that she "overcompensated for being a woman," that she should take "a course at charm school,"

and advised her to "walk more femininely, talk more femininely, dress more femininely . . . and wear jewelry" made by various partner-employers suggest the existence of bias that was gender-based. *Id.* 490 U.S. at 256, 109 S.Ct. at 1794. Hence the court concluded that where direct evidence was sustained neither indirect evidence nor inference is necessary.

■ On the other hand, to prove gender and/or race bias by resorting to the inferential proof process, the burden shifting method also established in *McDonnell Douglas* and its progeny is again utilized. That is a *prima facie* case of hostile environment and/or disparate treatment must be proved by plaintiff; if established, the burden of proof shifts to the defendant to articulate a neutral, legitimate, nondiscriminatory reason for its adverse action; and if defendant succeeds, plaintiff may offer proof that the defendant's articulated explanation is but a pretext. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 800–04, 93 S.Ct. at 1823–25. Thus, resolution of the prescription issue hinges upon a determination of whether the alleged incidents of harassment prior to May 1993 along with those of September 21, 1993 constitute a single cause of action, with prescription running from the date of the last incident.

Based on the foregoing principals, the Court analyzes the facts of this case, mindful of the fact the evidence must be viewed in the light most favorable to the plaintiff, as it must. *See Burfield, supra.* While August claims that Monica was the chief perpetrator of the intentional racial and gender harassment, Hall was a supervisor; he was Monica's superior; as supervisor, if legally established, he could be held vicariously or derivatively liable to plaintiff for his actions. *See Bustamento,* 607 So.2d at 536, n. 5.

In this case, plaintiff asserts that Monica boasted about how he had made former females in his division cry and that on innumerable occasions he reduced her to tears. According to plaintiff, Monica frequently referred to her as "worthless, useless" and suggested that she might lose her job. Allegedly, Monica regularly humiliated August by offensively uttering in the presence of other supervisors and co-workers that she did not know her job. As a result of these and other regularly abusive verbal and highly offensive speech and conduct, August was reduced to constant crying and started wearing dark glasses to disguise this from Monica. These actions ultimately led to sleeplessness, overeating and other mental distresses.

During this same period, plaintiff met with Monica and Hall, where she was told to take off the dark glasses and to stop addressing her superiors as "sir" because it sounded sarcastic. Upon August's return from her leave of absence on September 20, 1993, these same issues were raised by Hall and Hilgendorf at the September 21, 1993, meeting which she interpreted were part and parcel of the harassment to which she had been allegedly subjected by Monica and to which Hall allegedly concurred. It was deja vu.

■ Considering the fact that separate incidents might be of insufficient severity to comprise an independent claim of harassment, but when taken together they may be of sufficient severity and pervasiveness to establish such claims; that relatively "mild" harassment may become tortious if continued over a substantial period of time; and that there is a strong and continuous thread upon which these actions are strung, either by the same actor or co-actor, of the same nature, such conduct becomes tortious and actionable because of its continuous and cumulative nature, then prescription does not commence until the last act occurs or the conduct is abated. *See, i.e., Bustamento, supra;* Alice Montgomery, *Sexual Harassment in the Workplace: A Practitioner's Guide to Tort Actions,* 10 Golden Gate U.L.Rev. 879, 890 (1980). Consequently, there is a genuine issue of material fact whether the September 21, 1993, incident constitutes a continuing violation. As a result, there is a genuine issue of material fact as to whether prescription runs from that date or an earlier date such that summary judgment is inappropriate.

As to Star's argument that plaintiff's subjective interpretation of events is irrelevant (R.Doc. 34 at 4), this argument fails because plaintiff has shown to the extent required to

defeat summary judgment that Monica, with Hall's agreement earlier had raised the issue of plaintiff's wearing sunglasses and using the word "sir." And in view of the Supreme Court's admonition as to those comments that constitute race and gender-based bias, plaintiff has proffered sufficient admissible evidence in the record which at the very least *prima facie* demonstrates that she can satisfy a "fair-minded jury" that she is entitled to a verdict in her favor. *Price Waterhouse,* 490 U.S. at 235, 109 S.Ct. at 1782; *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

Accordingly,

IT IS ORDERED that Star's "Motion for Summary Judgment" is DENIED.