813 So.2d 1135 (2002)
Byrda WEATHERSBY
v.
Steven JACQUET, et al.
No. 01-1567.
Court of Appeal of Louisiana, Third Circuit.
April 3, 2002.
*1136 Louis Clayton Burgess, Attorney at Law, Lafayette, LA, for Byrda Weathersby.
John Goulding Swift, Swift & Rhoades, Lafayette, LA, for Steven Jacquet.
L. Katherine A. Theunissen, Preis, Kraft, & Roy, Lafayette, LA, for Lafayette Parish School Board.
Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS and MARC T. AMY, Judges.
AMY, Judge.
The trial court granted the defendants' motions for summary judgment finding that the factual backgrounds of any timely filed allegations of sexual harassment were insufficient. The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
The plaintiff, Byrda Weathersby, began employment with the Lafayette Parish School Board in November 1996. The plaintiff alleges that she was hired by Steven Jacquet to act as his clerical assistant. Ms. Weathersby contends that after she began her employment, Mr. Jacquet began sexually harassing her. She contends that this objectionable conduct consisted of, among other things, harassing phone calls, inquiries on sexual topics, inappropriate touching, and unconsensual sex. She contends *1137 that, after she reported the harassment, Mr. Jacquet refused to promote her to a higher position.
In September 1999, Ms. Weathersby filed a report with the Equal Employment Opportunity Commission, alleging that the harassment occurred between February 1, 1997 and June 1, 1999. In August 2000, the EEOC notified Ms. Weathersby that it declined to file suit in the matter and that she had ninety days from the date of notice in which to file suit.
Ms. Weathersby filed suit in state court on November 11, 2000, naming Mr. Jacquet and the Lafayette Parish School Board (LPSB) as defendants. State tort claims were made originally, but by amendment of the petition, the plaintiff raised federal claims related to the allegations of harassment under Title VII of the Civil Rights Act of 1964. LPSB filed a motion for summary judgment, arguing that the majority of the allegedly inappropriate behavior occurred prior to Ms. Weathersby's transfer from Mr. Jacquet's supervision in October or November of 1997. Following that period of harassment, the next allegedly offensive conduct occurred on June 1, 1999. LPSB argued that any cause of action stemming from the pre-transfer harassment had clearly prescribed. The next conduct did not occur until 1999 and was sufficiently separated by time to not constitute a continuing tort. Furthermore, LPSB argued that Ms. Weathersby's description of the 1999 conduct was insufficient to support a claim of harassment, under either federal or state law. Even if the 1999 conduct was sufficient and timely under federal law, the LPSB argues, it did not interrupt prescription as to any state law claims. Mr. Jacquet filed a similar motion for summary judgment.
The trial court granted the motions for summary judgment, finding that the allegations of harassment that occurred while Ms. Weathersby was under Mr. Jacquet's supervision had prescribed at the time of the filing of suit, as well as at the time of the filing of the EEOC action, as the last action occurred in November 1997. Any state law cause of action related to the June 1999 allegation, the trial court determined, had also prescribed by the date suit was filed, November 17, 2000. It concluded that the filing of the EEOC complaint did not interrupt prescription as to state law claims and although it may have interrupted federal law claims, the allegations as to the June 1999 incident were not sufficient to recover under Title VII. Finally, although the court concluded that the actions complained of prior to the 1997 transfer from Mr. Jacquet's supervision may have been actionable under either state or federal law, they were not timely asserted and, following the transfer, there were no instances of objectionable actions until June 1999, and thus, the course of conduct could not be seen as continuous.
Although the plaintiff makes a number of arguments, she designates the following assignment of error:
The district court erred in its Ruling on Motion for Summary Judgment by determining the actions of Steven Jacquet on June, July and August of 1999 as described in plaintiffs affidavit and the EEOC complaint were insufficient to create a genuine issue of material fact that his conduct was part of the continuous harassment and therefore preventing plaintiffs claim from prescribing.

Discussion
With regard to summary judgment, La. Code Civ.P. art. 966 provides, in pertinent part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, *1138 may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least four days prior to the date of the hearing unless there are local rules of court to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
On appeal, the reviewing court considers granting or denying of a motion for summary judgment de novo, using the same criteria used by the trial court. Goins v. Wal-Mart Stores, Inc., 01-1136 (La.11/28/01); 800 So.2d 783.

Prematurity
The plaintiff first argues that the trial court erred in granting the motion for summary judgment as adequate discovery had not been conducted. She references La.Code Civ.P. art. 966(C), which indicates that a summary judgment may be granted "[a]fter adequate discovery or after a case is set for trial...." She states that her "deposition has not been taken, the defendant[']s deposition has not been taken, this matter was not set for trial and there has not been adequate discovery." We find no merit in this assertion.
As can be seen above, Section C of Article 966 provides that summary judgment may be granted after adequate discovery. However, discovery does not necessarily have to be completed. Rather, the inquiry is whether the parties have been given a fair opportunity to present their claims. Berzas v. Oxy USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97); 699 So.2d 1149, (citing Simoneaux v. E.I. duPont de *1139 Nemours and Co., Inc., 483 So.2d 908 (La. 1986)). Unless the nonmoving party demonstrates probable injustice, the matter should not be delayed when it appears early on that there are no genuine issues of material fact. Id.
We find no evidence that the plaintiff demonstrated probable injustice in the timing of the motion for summary judgment. The petition instituting this matter was filed on November 17, 2000. The answers to the petition gave full notice that prescription was an issue to be addressed. The motion for summary judgment by LPSB was filed on May 22, 2001, a full six months after the filing of the petition. Mr. Jacquet's motion for summary judgment was filed June 1, 2001. The hearing on the motion for summary judgment was not held until July 2, 2001.
The plaintiff complains that, because depositions had not been conducted at the time of the motion for summary judgment, both defendants relied on the plaintiff's "sworn statement." Although the plaintiff argues that adequate discovery was not conducted, we do not find that the plaintiff was penalized by use of her sworn statement. To the contrary, reference to the statement, which was submitted as evidence by both defendants, indicates that it was a statement given to a school board attorney and recorded by a court reporter. The statement, which is one hundred pages in length, is a narrative of the plaintiffs version of events and is virtually uninterrupted by questions from the attorney. In short, it appears that the plaintiff spoke freely and extensively regarding the events at issue, beginning with her employment with the LPSB. Thus, all of the allegations, along with a host of other background material, should be set forth in the sworn statement, which was under the plaintiffs control. Furthermore, if the plaintiff felt potentially prejudiced by the absence of her deposition, she had the opportunity during the months following the filing of the petition to conduct a deposition or produce affidavits with additional evidence. Given these factors, we do not conclude that the trial court was required to find summary judgment premature.

Interruption of Prescription
Next, the plaintiff alleges that Title VII actions are appropriately filed in either state or federal court and that, because she followed the time requirements of Title VII, the trial court was incorrect to conclude that her suit was untimely. Ms. Weathersby points out that she filed her action in state court, which was eventually amended to specifically allege a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., within ninety days of receipt of the "Notice of Right to Sue within 90 Days" from the EEOC. Thus, she contends that as her suit was timely under Title VII, and states enjoy concurrent jurisdiction with federal courts on such matters, her suit is timely. We address separately the state law claims, the federal claims, and the question of whether the facts, as alleged, are those of a continuing tort.

State Claims
Suit was originally filed alleging state law claims for "sexual harassment, sexual assault and batter[y], intentional infliction of emotional distress, [and] invasion of privacy...." This type of claim is subject to the one-year prescriptive period described in La.Civ.Code art. 3492.[1]
*1140 In this instance, the actions allegedly occurred in 1997 and again in the summer of 1999. Suit was not filed until November 2000. Accordingly, the matter was untimely. Neither do we find merit in any assertion that a claim under federal law would in any way interrupt state law prescriptive periods. See, e.g., Edwards v. Sawyer Indus. Plastics, 32,346 (La.App. 2 Cir. 8/18/99); 738 So.2d 1232, writ denied, 99-2724 (La.11/24/99); 750 So.2d 990.

Federal Law Claims
At the outset we observe that with regard to federal claims, the plaintiffs allegations as to the 1999 actions are not sufficient to indicate that the plaintiff can prevail. In the plaintiffs affidavit filed along with her opposition to motion for summary judgment, the plaintiff alleges:
1. That in August, 1999 after I had given a deposition to Nathan Roberts at the Lafayette Parish School Board and before the September hearing at the School Board, while I was walking down the hallway of the assistant superintendent and Ms. Betty Broussard's office, Steve Jacquet walked over to me and said, "Byrda, I'm looking for Nathan Roberts. Have you seen Nathan Roberts?" I said, "I should spit in your face. Get away from me." This occurred by Betty Broussard's office which is located down the hallway on the opposite side of the building from where Mr. Nathan Roberts' office is located.
2. That also in June or July of 1999 when my supervisor, Mr. Ken Waters, was away on business, Mr. Steve Jacquet came into my office. He said that he had just left the maintenance building and was looking for Mr. Waters. I told him that Mr. Waters was not in. He stayed at the doorway to my office and started asking me all kinds of questions about how my department purchased supplies and chemicals. He had his hand in his pocket and said, "I can ask you these questions because I don't want anything from you." I felt afraid because that was the only exit to my building. I was alone in my office building and he had sexual relations with me before on a prior occasion in the main warehouse when I was alone (September, 1997) I felt afraid for my safety.
These actions, as described, simply do not rise to any type of behavior recoverable under Title VII. The United States Supreme Court has described recoverable conduct as:
When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," [Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct., 2399, 2405, 91 L.Ed.2d 49], that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," id. at 67, 106 S.Ct., at 2405 (internal brackets and quotation marks omitted), Title VII is violated.
This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in Meritor, "mere utterance of an ... epithet which engenders offensive feelings in a employee," ibid. (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile abusive work environmentan environment that a reasonable person would *1141 find hostile or abusiveis beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.
Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).
Notwithstanding the seriousness of the 1997 alleged conduct, the conduct in 1999 is not of a quality similar to that described by the Supreme Court in Harris. Rather, the encounters, as set forth, in the plaintiffs affidavit may be described as that which would be likely to occur between parties following a workplace report of harassment.

Continuing Tort
In addition to not being actionable in their own right, the 1999 encounters cannot be seen as the last act in a continuing tort, one which would allow for the timely filing of a petition for the entire course of conduct. In Bustamento v. Tucker, 607 So.2d 532 (La.1992), the Louisiana Supreme Court considered a harassment suit involving claims that the plaintiffs suit had not prescribed as she had been subjected to a continuous course of offensive conduct. The court, speaking as to the cumulative nature of the offending actor's conduct, stated:
While each incident alleged by Ms. Bustamento may not necessarily be classified as "outrageous," when her allegations are viewed properly as a whole, consisting of a continuing flow of related acts, by the same actor, stretching across a two-year span, the cumulative effect of them could serve to render such actions "outrageous" and actionable under White [v. Monsanto Co., 585 So.2d 1205 (La.19910)], supra. Moreover, the last act, just as previous acts of harassment, does not have to be in and of itself actionable, but rather need only be an act in furtherance of the continuing pattern of harassment so as to indicate that the harassment has not abated. See Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600, 603 (1951); See also Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir.), writ refused, 376 So.2d 961 (La.1979).
Id. at 543 (footnote omitted).
The course of conduct in the present case differs from that in Bustamento. Although the 1999 actions were not actionable, they cannot be seen as "an act in furtherance of the continuing pattern of harassment so as to indicate that the harassment has not abated." Id. In Bustamento, the offensive conduct occurred on an almost daily basis. Id. In the present case the plaintiffs allegations indicate an almost two-year period between the acts of 1997 and the 1999 encounters. Further, not only are the acts distant in time, but are of a strikingly different nature as well. The alleged conduct of 1997 consisted of sexual intercourse, sexual conversations and innuendo. The 1999 events, however, consisted of the encounters set forth above and involved more benign conversation. There is no indication in the sworn statement that other alleged encounters took place between 1997 and 1999. We find no evidence indicating that the alleged harassment had not abated following the 1997 conduct. This argument lacks merit.

DECREE
For the foregoing reasons, the judgment entered by the trial court is affirmed. All costs of this proceeding are assigned to the plaintiff, Byrda Weathersby.
AFFIRMED.
NOTES
[1] Art. 3492. Delictual Actions

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.