DREW, J.
liOn November 26, 2007, Bennie Mims, on behalf of his father, Howard Mims, filed a request for a medical review panel. He asserted that Howard Mims was a patient at Lifecare Hospital beginning on October 16, 2000, and that the failure of Lifecare to properly care for Howard Mims led to the development of a bedsore on his lower right back. He further asserted that the bedsore became infected, developed into a Stage IV bedsore, and resulted in Howard Mims’s death on December 24, 2006.
Bennie Mims, in a pro se capacity and on behalf of his father’s unopened succession, filed suit against Lifecare Hospitals on November 28, 2007. The petition alleged that:
• Howard Mims had been a patient at Lifecare on October 16, 2006;
• Lifecare failed to properly provide the care needed by Howard Mims;
• Howard Mims developed a bedsore on his lower right back while in the care of Lifecare;
• Lifecare failed to properly treat the bedsore, and the bedsore worsened;
• due to Lifecare’s negligence, the bedsore developed into a Stage IV bedsore; and
• Howard Mims developed complications from the bedsore that caused his death on December 24, 2006.
Lifecare filed the exception of prematurity, in which it asserted that Bennie Mims’s lawsuit had not been first submitted to a medical review panel pursuant to La. R.S. 40:1299.47(B)(1). Lifecare also filed the exception of prescription, in which it asserted that Howard Mims had been a patient at Lifecare from October 17, 2006, until he was discharged on November 10, 2006, and that the suit, which was a survival action, was |2prescribed as it was filed more than one year after prescription began running on the date of discharge. Submitted in support of the exception of prescription was the face sheet of Howard Mims’s hospital record at Lifecare that showed the date of Howard Mims’s discharge.
Counsel for Mims enrolled in the case in January of 2008, and, on March 14, 2008, filed an amended petition asserting that Lifecare’s failure to take proper steps in caring for the bedsore caused continuous injuries that directly resulted in the death of Howard Mims. It was also asserted in the amended petition that Bennie Mims suffered emotional damages as a result of his father’s death. A copy of Howard Mims’s death certificate was submitted in opposition to the exception of prescription.
The trial court sustained the exception of prescription on the ground that even if Howard Mims’s injuries were in the nature of a continuing tort, Lifecare’s care and treatment of Howard Mims ended when he was discharged on November 10, 2006. Dismissed were the suit and the request for a medical review panel. Bennie Mims has appealed, asserting that prescription *663 commenced at the earliest on December 24, 2006.
DISCUSSION
The prescriptive period for a survival action based on medical malpractice is set forth in La. R.S. 9:5628(A), which states:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within | oone year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
La. R.S. 9:5628 does not provide the prescriptive period for wrongful death actions. Taylor v. Giddens, 618 So.2d 834 (La.1993). The commencement and running of the prescriptive period for wrongful death actions are controlled by the one-year liberative period applicable to delictual actions found in La. C.C. art. 3492. Id. See also La. C.C. art. 2315.2(B). Prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. Bustamento v. Tucker, 607 So.2d 532 (La.1992).
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502. An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Boyd v. B.B.C. Brown Boveri, Inc., 26,889 (La.App.2d Cir.5/10/95), 656 So.2d 683. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Campo, supra.
The party raising the exception of prescription ordinarily bears the burden of proof at the trial of the peremptory exception. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992). However, when the plaintiffs petition reveals on its face that prescription has run, the plaintiff bears the | ^burden of showing why the claim has not prescribed. Lima v. Schmidt, 595 So.2d 624 (La.1992).
The running of prescription is not revealed on the face of Bennie Mims’s original petition. In this pro se petition, Bennie Mims pled that the “accident herein complained of occurred” at Lifecare Hospital on or about December 24, 2006. His petition was filed within one year of this date. Nevertheless, Lifecare met its burden on the exception by establishing that Howard Mims had been discharged from their care on November 10, 2006, making this the date upon which prescription commenced.
In order to soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: contra non valentem agere nidia currit praescriptio, which means that prescription does not run against a person who could not bring his suit. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). Contra non valentem in medical malpractice suits is embodied in *664 La. R.S. 9:5628. White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992).
The doctrine of contra non va-lentem acts as an exception to the general rules of prescription by suspending the running of prescription when the circumstances of the case fall into one of four categories. Prescription is suspended under the fourth category of contra non va-lentón when “some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.” Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. Commonly known as the discovery rule, this category provides that prescription commences on the |fidate the injured party discovers or should have discovered the facts upon which his cause of action is based. Id. For this category to apply, the plaintiffs ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned by reasonable diligence. Renfroe v. State ex rel. Dept. of Transp. and Development, 01-1646 (La.2/26/02), 809 So.2d 947.
Other than his father’s death certificate, Bennie Mims presented no evidence concerning what he knew about his father’s condition, when he knew it, or the reason that he did not relate his father’s health condition to possible medical malpractice until the date of his father’s death. The death certifícate tells this court only that his father died at Schumpert Dubuis Hospital on December 24, 2006, that the treating physician attended to Howard Mims from December 5, 2006, until the date of death, and that the cause of death was cardiorespiratory arrest due to sepsis due to severe decubitus ulcer due to severe debility due to prior cardiovascular accidents. Based on the scant evidence presented in opposition to the exception, this court does not know what happened to Howard Mims from the time he was discharged from Lifecare until he died. It is not even clear from the record what the progression of the bedsore was or if the bedsore reached Stage IV level prior to discharge from Lifecare.
In Bustamento v. Tucker, supra, the supreme court recognized the existence of a continuing tort when the cumulation of acts and conduct, and the resulting cumu-lation of damages, transformed individual incidents of sexual harassment into an actionable tort. The court further stated that when | /‘conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated.” Id., 607 So.2d at 542. Even assuming that Life-care committed a continuing tort in the care and treatment it provided to Howard Mims, its last act was on November 10, 2006, when Howard Mims was discharged from Lifecare Hospital.
Based on this record, we cannot conclude that the trial court erred in sustaining the exception of prescription.
CONCLUSION
At appellant’s cost, the judgment is AFFIRMED.