WILLIAMS, J.
11 Plaintiff, Suzanne Hammond, on behalf of the Estate of her daughter Latousha Tillman, and on behalf of the minor child, Ladaizya D. Tillman, appeals the district court’s grant of an exception of prescription. For the following reasons, we affirm the district court’s ruling and remand this matter for further proceedings.
FACTS
On March 31, 2004, at approximately 11:35 p.m., the decedent, Latousha Tillman, presented to the emergency room at St. Francis Medical Center (“St. Francis”) in Monroe, Louisiana, complaining of pain, nausea and vomiting. At that time, Tillman was 25 years old and 23 weeks pregnant. Defendant, Dr. Sharon Joiner, an emergency room physician, evaluated and treated Tillman. At the time of Dr. Joiner’s evaluation, she determined that Tillman’s heart rate was over 130 beats per minute and the fetal heart rate was over 140 beats per minute. Laboratory tests revealed that Tillman had elevated liver enzymes, decreased kidney function, low potassium and elevated glucose. At approximately 3:00 a.m., Tillman was transferred, via ambulance, to Louisiana State University Health Sciences Center-Monroe (“E.A. Conway”). Upon arrival at E.A. Conway, the fetus’ heart rate was undeterminable, and Tillman was informed that the fetus had died. On April 4, 2004, labor was induced and Tillman gave birth to the stillborn infant.
Subsequently, Tillman’s condition dramatically declined. Her neurological status deteriorated; she became unresponsive and was placed on life support. On April 8, 2004, Tillman was transferred to Glen-wood |2Regional Medical Center in West Monroe, and later, to Meadowview Nursing Home in Minden in a persistent vegetative state. On January 24, 2005, Tillman was transported to LSU-Shreveport for a neurological examination. Upon arrival at LSU-Shreveport, the medical staff determined that she had a weak pulse but no blood pressure. Attempts to resuscitate Tillman were unsuccessful and she was pronounced dead.
On January 20, 2006, Tillman’s mother, Suzanne Hammond, “on behalf of the Estate of her daughter LATOUSHA TILLMAN, and on behalf of the minor child, LADAIZYA D. TILLMAN,” filed a request for a medical review panel. Plaintiff *1273 alleged that St. Francis and Dr. Joiner had committed negligence in the care and treatment provided to Tillman and had violated the Emergency Medical Treatment and Active Labor Act (EMTALA).[1]
On October 8, 2008, Dr. Joiner and the Louisiana Medical Mutual Insurance Company (“LAMMICO”), filed an exception of prescription, arguing that plaintiffs claims had prescribed. The district court granted the exception “with respect to all claims or causes of action asserted by [plaintiff] ... except that claim or cause of action for the wrongful death of Latousha Tillman[.]” Plaintiff appeals.
DISCUSSION
Survival Action — Ms. Tillman
Plaintiff contends the district court erred in finding that the survival faction with regard to Tillman had prescribed. Plaintiff argues that the survival action has not prescribed for the following reasons: (1) prescription does not run against minors and interdicts pursuant to LSA-C.C. art. 3492; (2) the action was filed -within the three-year prescriptive period set forth in LSA-R.S. 9:5628; and (8) the doctrine of contra non valentem applies.
We must reject plaintiffs argument that this matter has not prescribed pursuant to LSA-C.C. art. 3492. This Article provides:
Delictual actions are subject to a libera-tive prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
It is clear from the plain language of Article 3492 that tort claims are subject to a one-year prescriptive period. The portion which states that prescription “does not run against minors or interdicts” only applies to “actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions[.]” (Emphasis added). LSA-C.C. art. 3468 clearly states, “Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation.” We find that the exception set forth in LSA-C.C. art. 3492, providing that prescription does not run against minors and interdicts in products liability cases, is inapplicable to the instant case.
The prescriptive period applicable to a survival action based on medical malpractice is set forth in LSA-R.S. 9:5628, which provides:
|4No action for damages for injury or death against any physician ... [or] hospital ..., whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
(Emphasis added).
We must also reject plaintiffs argument that the action has not prescribed because it was filed within the three-year peremptive period set forth in LSA-R.S. 9:5628. A reading of LSA-R.S. 9:5628 *1274 shows that the statute sets forth two prescriptive limitations within which to bring a medical malpractice action: (1) one year from the date of the alleged act; or (2) one year from the date of discovery, with a three-year peremptive period by which all claims must be filed. See, Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La. 1986); Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502.
In this case, during the hearing, plaintiffs counsel argued:
[T]he law allows for a claim of medical malpractice to be filed within three years of the — or the peremptive period of the malpractice. And this case clearly was filed against Dr. Joiner within the three years of when she last saw the patient or was charged with the duty of the patient which was April 1, 2004. And so she had up until April 1, 2007 and this case was clearly within that three year peremptive period.
We find that plaintiffs argument is without merit. As stated above, LSA-R.S. 9:5628 provides two distinct one-year prescriptive periods: one year from the date of the alleged malpractice and one year from the date the Rplaintiff discovered the alleged malpractice. There is nothing in the law that supports plaintiffs argument that she had three years — from the date Dr. Joiner “last saw” Tillman. — to file a medical malpractice claim.
Plaintiff also contends the doctrine of contra non valentem applies to this matter. Plaintiff argues that the survival claim was brought within one year of the date of the discovery of the alleged malpractice; therefore, it is not barred by prescription.
Ordinarily, the movant bears the burden of proof on a trial of a peremptory exception, including the objection of prescription. SS v. State ex rel. State, Dept. of Social Services, 2002-0831 (La.12/4/02), 831 So.2d 926; Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Mims ex rel Succession of Mims v. Lifecare Hospitals, LLC, 43,770 (La.App.2d Cir.12/10/08), 1 So.3d 660, writ denied, 2009-0289 (La.4/3/09), 6 So.3d 773. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Campo, supra. See also, Lima v. Schmidt, 595 So.2d 624 (La.1992); Mims, supra.
A petition should not be found prescribed on its face if it is brought within one year of the date of discovery and the facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing the suit was not due to willful, negligent or unreasonable actions of the patient. Campo, supra;[2]. Heirs of Jackson v. O’Donovan, *1275 44,314 (La.App.2d Cir.5/13/09),fi 12 So.3d 435. Prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. Mims, supra, citing Bustamento v. Tucker, 607 So.2d 532 (La.1992).
Contra non valentem in medical malpractice suits is embodied in LSA-R.S. 9:5628. White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992); Edwards v. Alexander, 42,000 (La.App.2d Cir.6/6/07), 960 So.2d 336. The doctrine of contra non valentem acts as an exception to the general rules of prescription by suspending the running of prescription when the circumstances of the case fall into one of four categories. Prescription is suspended under the fourth category of contra non va-lentem when “some cause of action is not known or reasonably discoverable by the plaintiff, even though his ignorance is not induced by the defendant.” Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. Commonly known as the discovery rule, this category provides that prescription commences on the date the injured party discovers or should have discovered the facts upon 17which his cause of action is based. Id. For this category to apply, the plaintiff’s ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned by reasonable diligence. Renfroe v. State ex rel. Dept. of Transp. and Development, 2001-1646 (La.2/26/02), 809 So.2d 947.
In the instant case, the survival action allegedly arose out of the care and treatment provided by Dr. Joiner from March 31, 2004, until Tillman was transferred to E.A. Conway on April 1, 2004. The request for a medical review panel was filed on January 20, 2006. In the request, plaintiff alleged that Tillman presented to St. Francis on March 31, 2004; Dr. Joiner provided care and treatment to Tillman on March 31-April 1, 2004; Tillman was transferred to E.A. Conway on April 1, 2004; it was discovered that Tillman’s unborn child had died on April 1, 2004; Tillman died on January 24, 2005. Plaintiff did not allege any date with regard to the discovery of the alleged malpractice; nor did plaintiff allege “with particularity ... that [she was] unaware of malpractice prior to -the alleged date of discovery, nor that the delay in filing the complaint was not due to plaintiffs willful, negligent or unreasonable actions.” Therefore, we find that the survival action was prescribed. The plaintiff bore the burden of showing that the action has not prescribed.[3]
| sIt is undisputed that Tillman was in a vegetative state from April 2004 until her death on January 24, 2005, and was not in any position to “discover” any alleged mal *1276 practice. During the hearing on the exception, plaintiffs counsel stated:
[Tillman’s] inability to act, clearly we believe falls within that category of what contra non valentem was established for. She cannot be held to have acted to file a claim whenever she’s unable to and especially in this case whenever it was caused by the defendant, we believe. Second is ... we also have a minor child. She was five years old when her mother suffered this injury. And so the minor child was unable to act and at the very least is even able to even comprehend and discover any type of malpractice claim to be had[.] But at the same time ... they went searching to find an attorney, to make some investigation into [a] claim. And in my opinion only shows even moreover [sic] that due diligence was actually pursued by the grandmother who did not actually receive authority for full custody over this minor child in order to assert claims until May of 2006.[4] But regardless, there’s no showing in any of this that there was knowledge, actual or constructive by the plaintiffs in this case that there was a claim against Dr. Joiner. And that knowledge did not come about until proper investigation was had. And to be honest with you, when they came into my office in November of 2005, we immediately then filed this claim January 2006.
As stated above, plaintiff did not state in the petition that she was unaware of alleged malpractice and did not allege any date with regard to when she “discovered” that Tillman may have been a victim of medical |9malpractice. In her brief to this court, plaintiff argues, “[I]t did not become apparent to [Hammond] that the injury suffered by [Tillman] was a result of the malpractice of defendant, [Dr.] Joiner until November 2005[.]”
No testimony or evidence was introduced by plaintiff during the hearing on the exception of prescription. Documents introduced by Dr. Joiner show that Hammond was granted provisional custody of Tillman’s minor daughter on June 15, 2004 — less than two months after Tillman’s hospitalization and more than six months before Tillman died. The provisional custody order granted Hammond “the authority to make necessary decisions concerning Ladaizya D. Tillman, including, but not limited to those decisions involving educational, health, and legal mattersf.]” At some point thereafter, Hammond obtained the services of an attorney, who filed a request for a medical review panel on April 1, 2005, naming as defendants E.A. Conway, LSU-Shreveport and Dr. Khaled Shafiei.[5] There is no explanation in the record as to why no claim was filed against Dr. Joiner and St. Francis until January 20, 2006.
In Mims, supra, the plaintiff filed a request for a medical review panel on behalf of his deceased father, alleging that his father died from complications of a bedsore he developed while in the defendant’s care. The father was a patient at Lifecare Hospital from October 17, 2006, until November 10, 2006; the father died at another facility on December 24, 2006; the request for the review panel was filed on November 26, 2007. Plaintiff argued that the survival action was timely because it was filed | inwithin one year of the date of the decedent’s death. This court affirmed *1277 the district court’s ruling granting the exception of prescription, stating:
Other than his father’s death certificate, [the plaintiff] presented no evidence concerning what he knew about his father’s condition, when he knew it, or the reason that he did not relate his father’s health condition to possible medical malpractice until the date of his father’s death. The death certificate tells this court only that his father died at Schum-pert Dubuis Hospital on December 24, 2006, that the treating physician attended to [the decedent] from December 5, 2006, until the date of death, and that the cause of death was cardiorespiratory arrest due to sepsis due to severe decu-bitus ulcer due to severe debility due to prior cardiovascular accidents. Based on the scant evidence presented in opposition to the exception, this court does not know what happened to [the decedent] from the time he was discharged from Lifeeare until he died. It is not even clear from the record what the progression of the bedsore was or if the bedsore reached Stage IV level prior to discharge from Lifeeare.
[[Image here]]
Even assuming Lifeeare committed a continuing tort in the care and treatment it provided to [the decedent], its last act was on November 10, 2006, when [the decedent] was discharged from Lifeeare Hospital.
Based on this record, we cannot conclude that the trial court erred in sustaining the exception of prescription.
Id. at 664.
In this case, the record is devoid of any evidence to show when Hammond gained actual or constructive knowledge that Tillman’s condition may have been caused by possible malpractice on the part of Dr. Joiner. Documents introduced by defendants show that Hammond obtained provisional custody of Tillman’s minor child more than six months before Tillman’s death and engaged the services of an attorney, who filed a request for a medical review panel naming other defendants less than three months | n after Tillman’s death. The claim was filed one year from the date Tillman was treated at St. Francis by Dr. Joiner; however, as stated above, neither Dr. Joiner nor St. Francis was named in that claim. By a letter dated June 3, 2005, the medical review panel notified Hammond that her medical malpractice claim was invalid because she failed to pay the filing fees. Hammond did not seek to have the claim reinstated, and did not obtain the services of another attorney until at least five months later. We find that plaintiff failed to meet her burden of proving that the survival action on behalf of Tillman has not prescribed. Based on this record, we cannot conclude that the district court erred in sustaining the exception of prescription with regard to the survival action.
Wrongful Death — Stillborn Infant
Plaintiff also contends the district court erred in finding that the claim for wrongful death of the stillborn infant has prescribed. Again, plaintiff argues that Tillman, the only person who had the right to file the action, was unable to act, and plaintiff did not discover the medical malpractice until November 2005.
A plaintiff may recover damages sustained when a tortfeasor’s fault causes a prenatal injury to a fetus who is subsequently born dead because of that injury. LSA-C.C. arts. 26 and 2315; Danos v. St. Pierre, 402 So.2d 633 (La.1981). Although it may have its genesis in an act of malpractice, a wrongful death action is not a malpractice action, and therefore, it is not controlled by the prescriptive period for medical malpractice actions. Taylor v. Giddens, 618 So.2d 834 (La.1993). Because LSA-R.S. 9:5628 11?does not provide *1278 the prescriptive period for wrongful death actions, the commencement and running of the prescriptive period for such actions is controlled by the one-year liberative period applicable to delictual actions, LSA-C.C. art. 3492. Id.
We note that plaintiff did not specifically state a cause of action for the wrongful death of the stillborn infant. In the request for a medical review panel, plaintiff alleged that “on April 1, 2004, it was found that Latousha Tillman’s baby was dead.” At the hearing on the exception of prescription, the following colloquy took place:
[COURT]: [I]s there a claim being asserted for wrongful death of the unborn child? I saw some mention of this in briefs, but I don’t see anything necessarily to that effect. I didn’t see anything to that effect in the prayer of the claim document. So is that an issue or not?
[PLAINTIFF COUNSEL]: Yes, Your Honor, I believe — it’s not specifically plead [sic] asking for damages for that because I didn’t plead for any damages in the medical review panel process. But we do — we do believe that the assertion for damages for the death of the fetus are [sic] to be included.
* ⅜ ⅜
Nevertheless, we find that the claims with regard to the wrongful death of Tillman’s stillborn infant are barred by prescription. Plaintiff alleged that it was discovered that Tillman’s unborn fetus did not have a heartbeat on April 1, 2004. Plaintiff also alleged that Tillman gave birth to the stillborn child on April 4, 2004. The request for a medical review panel | i-jWas not filed until January 20, 2006, nearly two years after the death of the infant. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we affirm the district court’s judgment concluding that plaintiffs survival action with regard to Latousha Tillman and the wrongful death action with regard to the stillborn child are barred by prescription. We also affirm the trial court’s ruling that plaintiffs wrongful death action with regard to Tillman’s death was timely filed, as it was filed within one year of Tillman’s death. We remand this matter for further proceedings. Costs of this appeal are assessed to plaintiff.
AFFIRMED; REMANDED.

. According to statements made by plaintiffs counsel during the hearing on the exception of prescription, the EMTALA action is currently pending in federal court. Another claim, against Pafford Ambulance Service, is pending in the 1st Judicial District Court.

. In Campo, supra, the plaintiff filed a medical malpractice complaint on March I, 1994. The plaintiff alleged, inter alia, (1) on April 10, 1991, he underwent a laminectomy performed by the defendant; (2) on May 7, 1991, the defendant inserted a peritoneal shunt to treat a cerebral spinal fluid ("CSF”) leak; and (3) on October 26, 1993, the plaintiff was examined by another physician who opined that the use of the peritoneal shunt was improper. The plaintiff specifically alleged in the petition that he did not become aware that the defendant may have committed malpractice until October 26, 1993. The lower courts found that the petition had prescribed on its face, thereby shifting the burden of proof to the plaintiff. The Supreme Court granted writs and reversed, finding that the claim had not prescribed on its face. The Court stated:
Although the [plaintiffs'] petition was filed more than one year after the date of the last act of the hospital and [the defendant’s] last act upon which negligence was alleged, the plaintiff's pleadings made a prima facie showing that it was filed ‘within one year from the date of discovery’ and ‘within a period of three years from the date of the alleged act, omission or neglect.’ Accord *1275 ingly, the lower courts erred as a matter of law in shifting the burden to the [plaintiffs] to prove prescription was interrupted.
Id. at 509 (emphasis added).

. This case is distinguishable from the recent Supreme Court case, Williamson v. Hebert, 2010-0071 (La.4/5/10), 31 So.3d 1047, in which the defendant hospital bore the burden of proving the plaintiffs claim had prescribed. In Williamson, the plaintiff had surgery on August 3, 2000. Her symptoms failed to improve, so she consulted with two other physicians who assured her that her condition would continue to improve. In August 2002, the plaintiff conducted an internet search and discovered that her condition may have been caused by medical malpractice. On August 16, 2002, the plaintiff filed a request for a medical review panel. Citing Campo, supra, the Court noted that the plaintiff "clearly had some apprehension something was wrong following her surgery" but "mere apprehension” was insufficient to commence the running of prescription. Thus, the Court concluded that the surgeon failed to establish that the plaintiff had constructive knowledge of the alleged medical malpractice more than one year prior to the filing of her complaint.

. The record shows that Hammond was granted provisional custody of the minor child on June 15, 2004, authorizing her to perform legal acts on behalf of the child. She was awarded permanent custody on May 31, 2006.

. The complaints against these defendants were dismissed because the plaintiff failed to pay the filing fee.